Commonwealth *v*. Kline, Appellant.

Argued January 20, 1941. Before Schaffer, C. J., Maxey, Drew, Linn, Stern, Patterson and Parker, JJ.

*Lemuel B. Schofield,* with him *W. Bradley Ward* and *David A. Flacker,* for appellant.

*Ephraim Lipschutz,* Assistant District Attorney, with him *Charles F. Kelley,* District Attorney, for appellee.

OPINION BY MR. CHIEF JUSTICE SCHAFFER, March 24, 1941:

Appellant pleaded guilty to murder before a three judge court, which, after hearing the evidence, including that of defendant himself, adjudged him guilty of murder of the first degree, with life imprisonment as the penalty. It is urged upon us, in his behalf, that he was intoxicated to such a degree, at the time of the crime, as to inhibit him from forming an intent to take the life of his victim and that his crime was murder of the second degree.

The deceased was the mother of the young woman to whom defendant had been paying attentions for some time and whom he planned to marry. Shortly before midnight, on December 31, 1938, he, his fiancee and four other members of her family, left her mother's home to go to a hotel to attend a New Year's Eve party. Before leaving the house, they all drank some whiskey, just how much does not clearly appear. While in her home the deceased said something to defendant which might have offended him. After arrival at the hotel, he had more drinks and became intoxicated. His conduct was offensive to the other members of the party against whom he threatened he would "get even."

Ultimately he left the hotel alone and got into a taxicab, where he went to sleep on the back seat. The driver of the vehicle found him there, aroused him and he instructed the driver to take him to the home of the deceased. While on the way, defendant gave other directions, which were to take him to his home. The cab driver testified that defendant had evidently been drinking but "I wouldn't say that he was very intoxicated." When he arrived at his home, defendant went to his room and there procured a knife, variously described

as a hunting knife and as a scout knife with a five inch blade. He left the house, got into another taxicab and was driven to the home of his brother-in-law. Defendant did not have the money to pay his cab fare and the brother-in-law, whom he had aroused, came out of his house and paid it. While defendant was arousing the brother-in-law, the cab driver noticed something lying on the back seat, which he identified as a knife. Defendant came back, said "I forgot my knife" and took it. Thereafter, just how soon does not appear, but before daylight, he went to the home of the deceased, he says to see his fiancee. He testified that the door was open and finding no one on the first floor, he went to the second. The deceased awakened, asked who it was, he replied, telling her it was he, she asked him to wait until she put on her negligee. He entered her room. She asked about her daughter who had not come home, said something to him about getting out of the house, and that if he ever came back, she would poison him. Thereupon he stabbed her, but said he did not know how many times. The autopsy showed she had fifteen stab wounds. They caused her death. He walked from her bedroom to the bath room, where he washed the blood from his hands and from the knife, then went home, where he burned his blood stained clothing and the knife. He became a fugitive and was apprehended in Trenton, New Jersey, where he was serving a term in prison for robbery.

Under the evidence as we have outlined it, we conclude, as did the Judges of the court below, that the alleged intoxication of defendant at the time of the commission of the crime was not such as to make him incapable of deliberating and premeditating upon his act. Intoxication which will negative plan and premeditation and the intent to kill must be such as to subvert conscious purpose: *Com. v. Cleary*, 135 Pa. 64, 19 A. 1017; *Com. v. Detweiler*, 229 Pa. 304, 78 A. 271; *Com. v. Iacobino*, 319 Pa. 65, 178 A. 823.

The judgment of sentence is affirmed.