Commonwealth *v.* McCusker, Appellant.

Argued October 8, 1970; reargued April 27, 1972.
Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*John J. Hickton* and *John M. Tighe,* with them
*Dougherty, Larrimer, Lee & Hickton,* for appellant.

*Robert L. Eberhardt,* Assistant District Attorney,
with him *Carol Mary Los,* Assistant District Attorney,
and *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

Opinion by Mr. Justice Roberts, June 28, 1972:

We must decide today whether psychiatric evidence is admissible in a murder prosecution for the limited purpose of determining whether a defendant acted in the heat of passion. We are persuaded by the almost unanimous voice of professionally recognized authorities[1] that such evidence is competent and in certain circumstances admissible. Appellant did not raise the defense of complete insanity. Our decision today does not in any manner affect the M'Naghten test presently em-

---

[1] See, e.g., *State v. DiPaolo*, 34 N.J. 279, 168 A. 2d 401 (1961); followed in *State v. Sikora*, 44 N.J. 453, 210 A. 2d 193 (1965); *People v. Wells*, 33 Cal. 2d 330, 202 P. 2d 53 (1949) (dissents on other grounds, followed in *People v. Henderson*, 60 Cal. 2d 482, 35 Cal. Rptr. 77, 386 P. 2d 677 (1963) and *People v. Gorshen*, 51 Cal. 2d 716, 336 P. 2d 492 (1959); *Battalino v. People*, 118 Colo. 587, 199 P. 2d 897 (1948); *State v. Gramenz*, 256 Iowa 134, 126 N.W. 2d 285 (1964); American Bar Foundation, The Mentally Disabled and the Law (1962); A.L.I. Model Penal Code, §4.02(1) (proposed official draft (1962); MacDonald, Psychiatry and the Criminal (1969); Menninger, The Crime of Punishment (1968); Diamond and Louisell, The Psychiatrist as an Expert Witness: Some Ruminations and Speculations, 63 Mich. L. Rev. 1335 (1965); Katz, Law, Psychiatry, and Free Will, 22 U. Chi. L. Rev. 397 (1955); Kaplan, Punishment and Responsibility in Aquarius, 20 Buff. L. Rev. 181 (1970); Pouros, The Psychiatrist's Role in Determining Accountability for Crimes: The Public Anxiety and an Increasing Expertise, 52 Marq. L. Rev. 380 (1969); Taylor, Partial Insanity as Affecting the Degree of Crime—A Commentary on *Fisher v. United States*, 34 Calif. L. Rev. 625 (1946); Weihofen and Overholser, Mental Disorder Affecting the Degree of a Crime, 56 Yale L.J. 959 (1947); Woodbridge, Some Unusual Aspects of Mental Irresponsibility in the Criminal Law, 29 J. Crim. Law & Criminology 822 (1938-39); Comment, *Commonwealth v. Ahearn;* Psychiatric Testimony Ruled Inadmissible in Murder Trial to Show Lack of Deliberation and Premeditation, 71 Dick. L. Rev. 100 (1966); *Commonwealth v. Weinstein:* Psychiatric Testimony in Pennsylvania, 33 U. Pitt. L. Rev. 650 (1972); Note, Diminished Responsibility and Psychiatric Testimony in Pennsylvania, 28 U. Pitt. L. Rev. 679 (1967); English Homicide Act, 1957, 5 & 6 Eliz. II, c.11, §2(1); see *Regina v. Dunbar*, 41 Cr. App. R. 182 (1957).

ployed in this Commonwealth to determine a defendant's sanity. *Commonwealth v. Melton*, 406 Pa. 343, 178 A. 2d 728 (1962), cert. denied, 371 U.S. 851, 83 S. Ct. 93 (1962).

Our holding is but a belated recognition of the tremendous advancements made in the field of psychiatry during the last several decades: "The genius of the common law has been its responsiveness to changing times. . . . Drawing upon the past, the law must serve —and traditionally has served—the needs of the present. In the past century, psychiatry has evolved from tentative, hesitant gropings in the dark of human ignorance to a recognized and important branch of modern medicine. The outrage of a frightened Queen has for too long caused us to forego the expert guidance that modern psychiatry is able to provide." *United States v. Freeman*, 357 F. 2d 606, 624-25 (2d Cir. 1966).

Appellant James McCusker was charged with the murder of his wife and brought to trial before a jury on June 17, 1968. The jury returned a verdict of second degree murder. Appellant filed post-trial motions which were denied. A judgment of sentence of not less than ten nor more than twenty years imprisonment was imposed and appellant instituted this appeal.[2] Because the trial court refused to admit psychiatric evidence relevant to whether appellant acted in the heat of passion when he committed the act, we reverse the judgment of sentence and grant a new trial.[3]

---

[2] This case was originally argued October 9, 1970. On December 27, 1971, reargument was listed for the January 1972 Session at Philadelphia. By stipulation, the case was continued to the April Session at Philadelphia, and reargument was held on April 27, 1972.

[3] In view of the disposition we reach on this issue we need not discuss appellant's further contentions that (1) the trial court improperly allowed into evidence an involuntary confession; (2) the trial court abused its discretion by not allowing defense counsel

The actual commission of the slaying was not contested by appellant, but instead he sought to prove that he acted in the heat of passion.[4] To advance this partial defense to murder appellant offered psychiatric evidence. In rejecting that proferred evidence the trial court relied on this Court's earlier closely divided cases which precluded the admission of such evidence.[5] *Com-*

---

sufficient opportunity to discover from the Commonwealth what information it had obtained from "bogus subpoenaes"; (3) the trial court's charge to the jury was prejudicial.

[4] The defense of provocation and passion in a murder prosecution has been stated thusly: "'Voluntary manslaughter is a homicide intentionally committed under the influence of passion. . . . The term "passion" as here used includes both anger and terror provided they reach a degree of intensity sufficient to obscure temporarily the reason of the person affected. . . . Passion, as used in a charge defining manslaughter . . . means any of the emotions of the mind known as anger, rage, sudden resentment or terror, rendering the mind incapable of cool reflection. . . .'" *Commonwealth v. Colandro*, 231 Pa. 343, 350-51, 80 Atl. 571, 574 (1911). See also *Commonwealth v. Jennings*, 442 Pa. 18, 274 A. 2d 767 (1971); *Commonwealth v. Moore*, 398 Pa. 198, 157 A. 2d 65 (1959); *Commonwealth v. Donough*, 377 Pa. 46, 103 A. 2d 694 (1954); *Commonwealth v. Palermo*, 368 Pa. 28, 81 A. 2d 540 (1951); *Commonwealth v. Wucherer*, 351 Pa. 305, 41 A. 2d 574 (1945); *Commonwealth v. Flax*, 331 Pa. 145, 200 Atl. 632 (1938); *Commonwealth v. Paese*, 220 Pa. 371, 69 Atl. 891 (1908); *Commonwealth v. Drum*, 58 Pa. 9 (1868); see generally Michael and Wechsler: A Rationale of the Law of Homicide, 37 Colo. L. Rev. 1261, 1280-89 (1937); Note, Manslaughter and the Adequacy of Provocation: The Reasonableness of the Reasonable Man, 106 U. Pa. L. Rev. 1021 (1958).

[5] *Commonwealth v. Tomlinson*, 446 Pa. 241, 284 A. 2d 687 (1971) (majority opinion by BELL, C. J., concurring opinion by BARBIERI, J., dissenting opinion by ROBERTS, J., in which JONES and POMEROY, JJ., joined); *Commonwealth v. Weinstein*, 442 Pa. 70, 274 A. 2d 182 (1971) (opinion in support of affirmance of judgment by BELL, C. J., EAGEN and O'BRIEN, JJ., concurred in the result, opinion in support of reversal of judgment by ROBERTS, J., in which JONES and POMEROY, JJ., joined); *Commonwealth v. Rightnour*, 435 Pa. 104, 253 A. 2d 644 (1969) (opinion in support of affirmance of judgment by BELL, C. J., opinion in support of re-

*monwealth v. Tomlinson*, 446 Pa. 241, 284 A. 2d 687 (1971) ; *Commonwealth v. Weinstein*, 442 Pa. 70, 274 A. 2d 182 (1971) ; *Commonwealth v. Rightnour*, 435 Pa. 104, 253 A. 2d 644 (1969) ; *Commonwealth v. Phelan*, 427 Pa. 265, 234 A. 2d 540 (1967) and *Commonwealth v. Ahearn*, 421 Pa. 311, 218 A. 2d 561 (1966), however, dealt with the issue of whether a defendant could introduce psychiatric evidence to show he lacked the capacity to deliberate and premeditate. Moreover, those cases regarded the competency of psychiatric testimony with a rigidity which has been constructively criticized : " 'If a doctor were to bleed his patients with leeches today, or if a psychiatrist were to attribute insanity to the moon, the hue and cry would be tremendous. And yet instance after instance may be pointed out wherein the law has remained, sometimes for hundreds of years, curiously rigid, despite the changes in scientific opinion upon which the law was based. Many rules in the criminal law are still affected by early views concerning psychology which views are now outmoded or repudiated by newer discoveries through experimentation. A large number fail utterly to take cognizance of advances in education and educational methods.' "[6] Upon reflection and further consideration we now conclude that psychiatric evidence, coming as it does from a "recognized and important branch of modern medicine,"

---

versal of judgment by ROBERTS, J., in which JONES, J., joined, COHEN, J., dissented) ; *Commonwealth v. Phelan*, 427 Pa. 265, 234 A. 2d 540 (1967) (majority opinion by EAGEN, J., concurring opinion by BELL, C. J., dissenting opinion by ROBERTS, J., COHEN, J., dissented) ; *Commonwealth v. Ahearn*, 421 Pa. 311, 218 A. 2d 561 (1966) (majority opinion by BELL, C. J., dissenting opinion by ROBERTS, J., in which JONES, J., joined, dissenting opinion by COHEN, J.).

[6] Woodbridge, Some Unusual Aspects of Mental Irresponsibility in the Criminal Law, 29 J. Crim. Law & Criminology 822 (1938-39), quoted in Taylor, Partial Insanity as Affecting the Degree of Crime—A Commentary on *Fisher v. United States*, 34 Calif. L. Rev. 625 (1946).

should be admissible at trial for the purpose of determining whether a defendant acted in the heat of passion.

The Commonwealth does not dispute the excellent quality of the evidence that appellant sought to introduce through the testimony of highly qualified professionals in the disciplines of psychology and psychiatry. Among the two psychologists and two psychiatrists were two experts who examined appellant not at his behest but rather during the performance of their normal governmental duties at the Allegheny County Behavior Clinic. That Clinic routinely examines certain categories of offenders shortly following arrest. These four potential witnesses, including the clinic professional personnel and appellant's retained physicians, would have based their testimony on an exhaustive review of appellant's medical records, as well as their personal examinations and observations of appellant. Their testimony would have tended to establish that appellant was impassioned at the time of the offense. This passion, they were prepared to testify, had as its origins appellant's mental disorders as well as his recent awareness that his wife had entered into a meretricious relationship with his stepbrother and her threat to retain custody of his only child.

Any analysis of the admissibility of a particular type of evidence must start with a threshold inquiry as to its relevance and probative value. A leading commentator has suggested the following desideratum for relevancy: "[D]oes the evidence offered rendered the desired inference *more probable than it would be without the evidence?* . . . Relevant evidence, then, is evidence that in some degree advances the inquiry, and thus has probative value, and is prima facie admissible." McCormick, Evidence, §152 at 318-19 (1954) (emphasis in original); 1 Wigmore, Evidence §§9-10 at 289-95 (3rd ed. 1940).

Appellant sought to establish the general and well-recognized requirements for a jury finding of voluntary manslaughter. Specifically he attempted to establish that as a result of adequate provocation he acted in the heat of passion when he killed his wife. Our law is quite explicit that the determination of whether a certain quantum of provocation is sufficient to support the defense of voluntary manslaughter is purely an objective standard.[7] To establish sufficient provocation appellant relied on three events immediately preceding the slaying: his awareness within the last month before the crime that his wife had entered into a meretricious relationship with his stepbrother; his knowledge within minutes of the crime that his wife was perhaps pregnant with his stepbrother's child; and his wife's threat immediately before the crime that she was going to leave defendant and take with her his only child.

In making the objective determination as to what constitutes sufficient provocation reliance may be placed upon the cumulative impact of a series of related events.[8] The ultimate test for adequate provocation re-

---

[7] *Commonwealth v. Flax*, 331 Pa. 145, 155-56, 200 Atl. 632, 636 (1938); *Jacobs v. Commonwealth*, 121 Pa. 586, 15 Atl. 465 (1888).

[8] " 'If the defendant inflicted the wound in a sudden transport of passion, excited by what the deceased then said *and by the preceding events* which, for the time, disturbed her reasoning faculties and deprived her of the capacity to reflect, or while under the influence of some sudden and uncontrollable emotion *excited by the final culmination of her misfortunes*, as indicated by the train of events which have been related, the act did not constitute murder in the first degree.' " *People v. Caruso*, 246 N.Y. 437, 445-46, 159 N.E. 390, 392 (1927) (quoting from *People v. Barberi*, 149 N.Y. 256 (1896) (emphasis added). See *Ferrin v. People*, 164 Colo. 130, 433 P. 2d 108 (1967); *People v. Borchers*, 50 Cal. 2d 321, 325 P. 2d 97 (1958); *Baker v. People*, 114 Colo. 50, 160 P. 2d 983 (1945); *Maher v. People*, 10 Mich. 212, 81 Am. Dec. 781 (1862); Perkins, Criminal Law (1969) at p. 67; see also *Commonwealth v. Colandro*, 231 Pa. 343, 80 Atl. 571 (1911).

mains whether a reasonable man, confronted with this series of events, became impassioned to the extent that his mind was "incapable of cool reflection."[9]

Having found in a given situation that an accused was confronted with sufficient provocation, the focus then shifts to defendant's response to that provocation. The relevant inquiry is threefold: did the defendant actually act in the heat of passion when he committed the homicide; did the provocation directly lead to the slaying of the person responsible for the provocation;[10] and was there insufficient "cooling time" thus preventing a reasonable man from using his "reasoning faculties" and "capacity to reflect."[11] Absent any of these elements an accused's defense of provocation must fail and he is not entitled to a verdict of voluntary manslaughter.

---

The trial court indicated in its opinion that it disregarded appellant's discovery of his wife's illicit relationship in determining whether appellant was confronted with adequate provocation. In so doing, it ignored the well-settled principle that "preceding events" may have a "final culmination", and therefore its finding was erroneous.

[9] See footnote 4, supra.

[10] Thus even if confronted with adequate provocation a defendant may not kill, in the heat of passion, someone not responsible for the provocation. *Rex v. Manchuk*, 4 D.L.R. 737 (1937) (discussed in Michael and Wechsler, Criminal Law and its Administration (1940) at pp. 152-53).

[11] The great weight of authority holds that in nearly all instances it is for the jury to determine whether there was adequate "cooling time". See, Michael and Wechsler, Criminal Law and its Administration (1940) at 155 n.18 and cases cited therein. Only in very rare and exceptional cases can a court hold as a matter of law that a defendant had adequate "cooling time". *Commonwealth v. Dews*, 429 Pa. 555, 239 A. 2d 382 (1968) (cooling time sufficient where alleged provocation occurred one month before slaying). Here some of the events relied upon by appellant to show provocation occurred but a short time before the actual slaying. We cannot agree with the trial court's finding that appellant acted after an adequate "cooling time".

As an aid to the jury in making the above three determinations this Court has traditionally allowed an accused to offer testimony in an effort to establish his state of mind at the time of the crime.[12] Applying the established principles of relevancy to a murder prosecution where a defendant asserts that he acted in the heat of passion, it seems clear any evidence—lay or psychiatric—pertinent to that defense should be admissible. The principal vice of rejecting psychiatric testimony, as the trial court did here, is that it excludes from the consideration of the factfinders evidence of probative value vital to a determination of defendant's state of mind.

Here the sole and dispositive issue in controversy at trial was appellant's state of mind at the time of the slaying. The Commonwealth's theory was that appellant acted with malice, while appellant sought instead to prove that he acted without malice and in the heat of passion. Surely the admission of relevant and probative psychiatric evidence would have aided the jury in resolving those conflicting claims. The admissibility of relevant psychiatric testimony on the issue of whether defendant acted in the heat of passion does not, of course, intrude upon the jury's traditional function of determining for itself the credibility and weight which it will accord that testimony.

Our courts have admitted psychiatric evidence to determine, under the M'Naghten test, whether defendant was sane at the time of the crime.[13] Thus we receive psychiatric evidence where its potential effect may be to support a finding of insanity—and thus provide a

---

[12] *Tiffany v. Commonwealth*, 121 Pa. 165, 15 Atl. 462 (1888) ; see generally cases cited in footnote 4, supra.

[13] *Commonwealth v. Melton*, 406 Pa. 343, 178 A. 2d 728 (1962), cert. denied, 371 U.S. 851, 83 S. Ct. 93 (1962) ; *Commonwealth v. Woodhouse*, 401 Pa. 242, 164 A. 2d 98 (1960).

basis for a not guilty verdict. Similarly psychiatric evidence is admitted and indeed virtually controlling when the determination to be made is defendant's mental capacity to stand trial.[14] Finally, such evidence has long been admissible at the penalty stage of the trial.[15]

Surely the reliance we have consistently placed upon the competence of psychiatric evidence belies any concern that it is not a sufficiently recognized and accepted medical science capable of offering quality expert guidance. The weight of authority convincingly dispels any apprehension that the state of the art of psychiatry is not sufficiently advanced to discern the veracity of a defendant's self-serving statements. Indeed, one expert has noted: "[T]he insane do not lie—they expose the truth with alarming candor."[16] Another pair of commentators observed: "The psychiatrist is perfectly aware of the fact that the clinical history obtained from the patient is distorted and self-serving."[17]

It would indeed be anomalous to receive psychiatric evidence—as our courts do—to establish the complete defense of insanity but at the same time reject psychiatric evidence which seeks to establish only a partial de-

---

[14] "[T]he test at common law and employed by the courts in determining the mental capacity of a defendant to stand trial or to be sentenced or executed is not the M'Naghten 'right or wrong' test but whether the defendant is able to comprehend his position and make a rational defense." *Commonwealth v. Moon*, 383 Pa. 18, 23, 117 A. 2d 96, 99 (1955) ; *Commonwealth v. Novak*, 395 Pa. 199, 150 A. 2d 102 (1959) ; *Commonwealth v. O'Brien* 46 Wash. Co. 10 (1965).

[15] *Commonwealth v. Wooding*, 355 Pa. 555, 559, 50 A. 2d 328, 329 (1947) ; *Commonwealth v. Stabinsky*, 313 Pa. 231, 238, 169 Atl. 439, 442 (1933) ; see Act of December 1, 1959, P. L. 1621, 18 P.S. §4701.

[16] Roche, Truth Telling, Psychiatric Expert Testimony and the Impeachment of Witnesses, 22 Pa. B.Q. 140, 146 (1951).

[17] Diamond and Louisell, The Psychiatrist as an Expert Witness: Some Ruminations and Speculations, 63 Mich. L. Rev. 1335, 1353 (1965).

fense by showing that defendant acted in the heat of passion when he committed the homicide.

This Court has for many years permitted a defendant in a criminal prosecution to introduce evidence of intoxication to negate a finding that he had a specific intent to kill.[18] There is no reason in law or logic or public policy why we should not similarly receive psychiatric testimony in a homicide prosecution to establish that the act was committed in the heat of passion. In many ways the argument for admitting psychiatric evidence to determine whether a defendant acted in the heat of passion is much more compelling than when the asserted defense is based on excessive drug or alcoholic usage. It seems too obvious to emphasize that a defense of passion resulting in part from mental disorders is entitled to at least the same recognition and consideration as is presently accorded a defense relying on the conditions engendered by drugs and alcohol.

Clearly our recognition of the value of psychiatric evidence and its admissibility in determining whether a defendant acted in the heat of passion does not suggest that the M'Naghten test for legal sanity is being altered. Quite to the contrary many jurisdictions, including New Jersey and California, have comfortably recognized the two totally separate concepts. We, too, join those jurisdictions in recognizing both concepts. See, e.g., *People v. Henderson,* 60 Cal. 2d 482, 35 Cal. Rptr. 77, 386 P. 2d 677 (1963); *State v. Gramenz,* 256 Iowa 134, 126 N.W. 2d 285 (1964); *State v. Di Paolo,* 34 N.J. 279, 168 A. 2d 401 (1961); *Battalino v. People,* 118 Colo. 587, 199 P. 2d 897 (1948).

---

[18] *Commonwealth v. Ingram,* 440 Pa. 239, 270 A. 2d 190 (1970); *Commonwealth v. Brown,* 436 Pa. 423, 260 A. 2d 742 (1970); *Commonwealth v. Walters,* 431 Pa. 74, 244 A. 2d 757 (1968); *Commonwealth v. McCausland,* 348 Pa. 275, 35 A. 2d 70 (1944); *Commonwealth v. Kline,* 341 Pa. 238, 19 A. 2d 59 (1941); see also *Commonwealth v. Campbell,* 445 Pa. 488, 284 A. 2d 798 (1971).

In reality the view we adopt today promotes the dual societal interests of safeguarding the tranquility of the general public as well as assuring appropriate confinement and proper treatment for those who commit crimes and have been legally determined to be mentally disturbed. The Legislature has wisely provided that if a defendant is acquitted of a crime because of insanity, the court may under the Mental Health Act "direct the Attorney for the Commonwealth to act as petitioner to initiate commitment proceedings. . . ."[19] If committed the provisions of the Mental Health and Retardation Act insure that the individual will be confined and treated for the duration of his illness. Similarly if an accused charged with murder is convicted of manslaughter based on a showing through psychiatric evidence that because of mental disorders he acted in the heat of passion, the Commonwealth, if it decides the interest of society and the individual so require, may move to have the defendant committed to a mental institution—even beyond the sentence limit—so long as he needs treatment.[20]

If the trial results in a conviction of a lesser offense and a shorter sentence, the Mental Health and Retardation Act contains adequate safeguards to allow the Commonwealth to confine a mentally disturbed individual. In short, sufficient remedial procedures are readily available which insure that the mentally ill defendant will be confined and subjected to treatment for the duration of his illness.[21]

---

[19] Mental Health and Retardation Act of 1966, Special Sess. No. 3, October 20, P. L. 96, art. IV, §413, 50 P.S. §4413.

[20] Mental Health and Retardation Act of 1966, Special Sess. No. 3, October 20, P. L. 96, art. IV, §406, 50 P.S. §4406; see also American Bar Foundation, The Mentally Disabled and the Law (1962) at 367.

[21] Indeed one leading psychiatrist and authority on correctional programs, Dr. Karl Menninger, has suggested that the security of

Our holding that psychiatric evidence is admissible as an aid in determining whether an accused acted in the heat of passion at the time of his offense is only a natural and logical application of the orderly and authoritative development of the law of evidence in such cases. Thus we respond appropriately and justly to the prophetic reminder of Mr. Justice FRANKFURTER: "Wisdom too often never comes, and so one ought not to reject it merely because it comes late."[22]

The judgment of sentence is reversed and a new trial is granted.

---

CONCURRING AND DISSENTING OPINION BY MR. JUSTICE EAGEN:

I concur in the grant of a new trial because I am persuaded the trial court erred in precluding the jury from returning a verdict of guilty of voluntary man-

---

society is advanced by committing those mentally disturbed who commit crimes to mental institutions for the full period they require confinement and treatment—rather than incarcerating them in a strictly penal institution for a fixed term which may be less than the period of necessary treatment and confinement:

"But you may ask—the man was dangerous, immoral, ruthless, unpredictable—why *not* eliminate him?

"For the reasons that . . . [e]liminating one offender who happens to get caught *weakens* public security by creating a false sense of diminished danger through a definite remedial measure. Actually, it does not remedy anything, and it bypasses completely the real and unsolved problem of *how to identify, detect, and detain potentially dangerous citizens.*

"What kind of creature was this anyway? And how did he get that way? What gave him the wild and fearful idea? What was he most afraid of? What was burning inside him? What *might* have deterred him? . . . How do patterns of thought and action such as this get started, and how can the rest of us become alerted in time to prevent such tragedies?" Menninger, The Crime of Punishment 108-109 (1968) (emphasis in original).

[22] *Henslee v. Union Planters Nat. Bank & Trust Co.*, 335 U.S. 595, 600, 69 S. Ct. 290, 293 (1949) (dissenting opinion).

slaughter. In view of all the circumstances disclosed by the record, such a verdict should not have been ruled out as a matter of law.[1] However, I cannot in good conscience agree a new trial should be granted for the reason advanced by the Majority.

In a series of prior cases, this Court consistently ruled psychiatric testimony to the effect that one accused of crime suffered from an emotional or mental compulsion or disturbance which influenced his conduct is not admissible as trial evidence on the issue of guilt,[2] unless the disturbance amounted to insanity within the legal meaning of that term. In my view, this was a wise and sound rule. Regrettably, it is now rejected by a new Majority and the theory of diminished responsibility is recognized and accepted in its stead. Prior decisions are overruled with a doctrinaire logic theoretically appealing, but lacking in practical wisdom.

Knowledge of what governs the mind and man's behavior has advanced over the centuries, but the science of psychiatry has a long, long way to go before it can be safely relied upon for the purposes the Majority approves and advocates.

The ruling of the Majority in this case opens the door to pitfalls of monumental proportions. To say the least it is illadvised. From now on in Pennsylvania every pet theory advanced by a psychiatrist will have probative value in determining criminal responsibility. The psychiatrists should have a field day.

Mr. Justice O'BRIEN joins in this opinion.

---

[1] I also have serious reservations about the correctness of the trial court's ruling permitting McCusker's confession in evidence, but since the Majority do not discuss this issue, I will likewise refrain from doing so.

[2] It is always admissible on the issue of punishment.