**Commonwealth v. Johnson**

*Robert Banks*, First Assistant District Attorney, and *Samuel J. Orr, IV*, Assistant District Attorney, for Commonwealth.

*Michael Wherry*, for defendant.

ACKER, J., September 8, 1972.—At the request of defendant's counsel, a pretrial conference was held in this case. There, counsel for defendant informed the court of a desire of the defense to present expert testimony concerning a degree of alleged mental incapacity of defendant. Defendant is charged with failure to stop at the scene of an accident.[1] Defendant's counsel informed the court that the testimony proposed will not arise to the level of the M'Naghten rule but something less. The court was supplied by defendant's counsel with a copy of the "Administration and Interpretation of the Minnesota Multiphasic Personality Inventory" as given by Carolyn G. Pritchard, a psychological examiner and a psychiatric evaluation by Dr. Robert J. Dane, a psychiatrist.[2] The crux of defendant's position appears to be as taken from the report of Dr. Dane, "I feel that her specific illness is such that she was incapable at the moment of the accident of either evaluating her own performance to the nature of the accident or the possible consequences of her behavior following the accident." The legal strength which defendant relies upon is the recent decision of the Pennsylvania Supreme Court of Commonwealth v. McCusker, 448 Pa. 382, 292 A. 2d 286 (1972). Admittedly, the type of testimony now proposed was beyond any consideration prior to this

---

[1] Act of April 29, 1959, P. L. 58, sec. 1027, 75 PS §1027.

[2] Both of which are made a part of the record.

decision. Therefore, the issue is clear. Does the McCusker case open the door for the type of testimony now proposed for the offense of failing to stop at the scene of an accident. McCusker concerns itself with a homicide. Defendant had been charged with the murder of his wife and proposed to introduce psychiatric evidence that because of his mental condition at the time of the act, his conduct was performed in the heat of passion and, therefore, the jury should have been permitted to consider whether he was guilty of voluntary manslaughter. In fact, the jury found him guilty of second-degree murder. The majority felt that the time was right to move away from a long series of Pennsylvania Supreme Court cases refusing such testimony. In a concurring and dissenting opinion by Mr. Justice Eagen, joined in by Mr. Justice O'Brien, it is noted that the ruling of the majority ". . . opens the door to pitfalls of monumental proportions. To say the least it is illadvised. From now on in Pennsylvania every pet theory advanced by a psychiatrist will have probative value in determining criminal responsibility." This case reflects that fear.

However, a close reading of McCusker convinces this court that defendant's counsel has chosen the wrong case to advance the psychiatric argument. There is no comparison between the mental requirement of malice and conduct performed in the heat of passion as is present in murder and voluntary manslaughter, respectively, to the conduct of leaving the scene of an accident. The fact that a defendant may not know the possible consequences of her behavior following an accident is completely immaterial. What Dr. Dane actually means by concluding ". . . she was incapable at the moment of the accident of . . . evaluating her own perform-

ance to the nature of the accident . . ." is difficult to understand but, by the stipulation of defense counsel, this is not the M'Naghten test. Therefore, he is not saying that she failed to understand the nature of the act performed; rather, it would appear he is concluding she was unable to evaluate her conduct in relation to the act performed.

The simple answer to defendant's contention is that McCusker is limited to homicide and should not be extended. However, the fairer answer would appear to be that the crime for which defendant is charged does not require the proof of any specific mental element; rather, the issue is whether the perpetrator did the act regardless of what was in her mind. If she ran from fear or lack of understanding of the police processes or because she wanted the help of some relative or friend to face the authorities or simply wanted to get away are all immaterial. The purpose of the statute is to require a person involved in an accident to stop, identify herself, render assistance and transport a party to a doctor or hospital if that be required. The elements of murder and voluntary manslaughter are so foreign to the offense for which defendant is charged that the two are completely inapposite.

Wherefore, the request of defendant to present to the jury the issue of mental incapacity as proposed in the pretrial is denied. Defendant, however, may and should make an offer at the time of trial of exactly what he would propose to prove so that the record may be clear.

## ORDER

And now, September 8, 1972, as a result of a pretrial conference in this matter, the defense of lessened

mental capacity which fails to arise to the level of M'Naghten's rule is denied. Defendant may make an offer at the time of trial of that proposed defense but the basic defense may not be proved as it is not a recognized defense under the present applicable law of the Commonwealth of Pennsylvania.

## OPINION SUR MOTION FOR NEW TRIAL

STRANAHAN, P. J., January 23, 1973.—Defendant has been charged with a violation of section 1027(a) of The Vehicle Code of April 29, 1959, P. L. 58, 75 PS §1027, which provides, "That the operator of any vehicle involved in an accident, resulting in injury or death to any person or damage to property, shall immediately stop such vehicle at the scene of such accident."

Her case was tried before a jury and she was convicted. She now makes a motion for new trial and alleges as error a ruling that this court made on an offer by defendant to produce psychiatric testimony to show that defendant was incapable at the moment of the accident of either evaluating her own performance to the nature of the accident or the possible consequences of her behavior following the accident.

This offer was refused by the court and exceptions were taken by defendant.

It is this court's understanding that a pretrial conference was held in this case at which time the same offer was made and an opinion was written by Acker, J., ruling that this testimony was not rele-. vant under the existing circumstances.

Defendant raises the same arguments that she did at the pretrial conference, relying primarily on the case of Commonwealth v. McCusker, 448 Pa. 382. In that case, the court held that testimony could

be offered by expert witnesses to show that sufficient provocation was present to support defendant's theory that he acted in the heat of passion, thereby reducing the charge of murder to voluntary manslaughter.

The court states at page 384: "We must decide today whether psychiatric evidence is admissible in a murder prosecution for the limited purpose of determining whether a defendant acted in the heat of passion."

The Supreme Court permitted such testimony because it felt that the field of psychiatry has advanced to the stage where testimony of this type is reliable.

We interpret this ruling to mean that such testimony can be produced for the purpose of determining whether or not "heat of passion" existed in the mind of defendant in a homicide case but we do not feel that the Supreme Court intended to have this case stand for the proposition that this type of testimony can be used in a case involving the failure of a defendant to stop at the scene of an accident. We think that the rule applies only to a case where malice may be involved or where specific intent may be an issue, but we do not find any language in this case that indicates the elements of the misdemeanor with which Sandra Johnson is charged are a part of the problem that the Supreme Court was considering in Commonwealth v. McCusker, supra.

Defendant also relies on the case of People v. Nance, 25 Cal. App. 3d 925, 102 Cal. Rep. 266. In that case, defendant was charged with burglary and arson and the question for the court to decide was whether or not psychiatric testimony could be received for the purpose of showing diminished mental capacity. In other words, defendant produced

testimony at the time of trial that when he entered the building he had no intention of setting it afire, but that after he got in the building he got excited and had an urge to start the fire and that he had a feeling that lead him to burn things just to see them burn. The question involved was whether diminished capacity due to a mental defect could be raised as a defense to the crime of arson for which defendant was charged.

The California court ruled that it could not. The reasons for this ruling are that the specific intent, referred to in "diminished capacity" cases, is not the type of specific intent present in an arson case. The specific intent referred to would be that found in a homicide case when the charge was murder and could be reduced to manslaughter.

The other reason the court refused to recognize this defense under the circumstances was one of public policy. It was the announced position of the court that this defense might be used to reduce a crime but it could not be used to effect an acquittal. The court states, at page 270:

"Policy reasons weigh in our decision even more strongly than do the technical distinctions between the general mens rea and specific intent. The defense of diminished capacity in a crime such as arson, like the defense of insanity, would be a complete defense to the charge. But unlike the defendant exonerated by virtue of insanity, the pyromaniac would not, under our present system, be subject to compulsory treatment. While there is merit to the reasoning that society's interests would be better served by hospitalizing, rather than imprisoning, the person who is compelled by uncontrollable impulse to set fires, we believe that to be a matter for legislative rather than judicial action."

We, therefore, conclude that this court was proper in refusing to permit the psychiatric testimony offered by defendant on the record because specific intent is not an element of the crime of leaving the scene of an accident. Admittedly, defendant must know that there was an accident and must leave after realizing that the accident has occurred but this is not the type of mens rea that the court is talking about in the cases that we have considered.

We finally conclude that public policy does not permit, at the present time, a defendant to be exonerated from a claim by raising this defense. If such change is to be made it must be made by the legislature rather than the courts.

### ORDER

And now, January 23, 1973, the motion for new trial is refused and exceptions are granted to defendant.