J-S19009-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SANTIAGO PEDROSO, | |
| Appellant | No. 846 EDA 2015 |

Appeal from the Judgment of Sentence Entered February 25, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0012715-2013

BEFORE:  BENDER, P.J.E., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:                **FILED MAY 17, 2016**

Appellant, Santiago Pedroso, appeals from the judgment of sentence of an aggregate term of life imprisonment, imposed after he was convicted of one count each of first-degree murder (18 Pa.C.S. § 2502(a)), carrying a firearm without a license (18 Pa.C.S. § 6106), carrying a firearm on a public street in Philadelphia (18 Pa.C.S. § 6108), and possessing an instrument of crime (18 Pa.C.S. § 907).  After careful review, we affirm.

The facts which led to Appellant's convictions are set forth in the following portion of the trial court's Pa.R.A.P. 1925(a) opinion:

> At trial, the Commonwealth presented the testimony of Philadelphia Police Officers Richard Keen, Carlos Cruz, Deatrice Kennedy (ret.), and Clyde Jones, Walter White, Jeffrey Minio, and Rachel Pedroso.  [Appellant] presented the testimony of Philadelphia Police Officer Justin Kensey.  Viewed in the light

most favorable to the Commonwealth as the verdict winner, the evidence established the following.

On June 21, 1992, at approximately 7:30 p.m., [Appellant] and his daughter, Rachel Pedroso, were having a Father's Day dinner at The Hathaway Inn, at 515 West Chelten Avenue. While they were eating dinner, [Appellant] talked to Rachel about the relationship between [Appellant's] wife, Maria Gomez, and Delores Alvarez. Alvarez had moved to Philadelphia from California and had previously lived with [Appellant], Rachel, and Gomez. About one month prior to the Father's Day dinner, Rachel, Gomez, and Alvarez had moved out of the home because [Appellant] believed that Alvarez was having a lesbian affair with Gomez and [Appellant] wanted Alvarez out of the house.

As [Appellant] and Rachel were talking at dinner, Gomez and Alvarez entered the restaurant. Upon seeing Gomez and Alvarez, [Appellant] stated, "God sent her to me" and left the restaurant with Rachel, returning to his home approximately one block away. [Appellant] then went into the basement and, before leaving the house, told Rachel, "I'm sorry I have to do this, but I'm doing this because of you, because you don't' want to come live with me." [Appellant] also told Rachel to stay at his house, as he didn't want her to see what he was going to do.

Defendant then returned to the restaurant, with Rachel following him saying, "daddy no, daddy, no." Rachel continually attempted to get [Appellant] not to return to the restaurant, but [Appellant] repeatedly pushed her away. [Appellant] then entered the restaurant, approached Gomez and Alvarez, pulled out a gun and shot Alvarez five times. [Appellant] used a black .38 caliber revolver to shoot Alvarez. [Appellant] then turned the gun on Gomez, but Rachel interposed herself between them and [Appellant] lowered the gun. [Appellant] told Gomez that he would not shoot her because of their daughter. [Appellant] then left the restaurant on foot. Rachel identified her father to police shortly after the shooting.

Following the shooting, [Appellant] fled from the United States, eventually being arrested more than twenty-one years later in the Philippines. Upon being returned to Philadelphia, [Appellant] provided a statement to police, in which [Appellant] admitted that he had shot Alvarez and fled the scene. [Appellant] stated that he had used a .38 caliber revolver. [Appellant] then admitted that he had fled Philadelphia, traveling first to New

York City, then the Dominican Republic, then Venezuela, and finally to the Philippines, where he had remarried. [Appellant] claimed in his statement that he only fired his gun after being shot at by Alvarez. However, no firearm was ever recovered from Alvarez.

Trial Court Opinion (TCO), 5/28/15, at 2-3 (footnote and citations to the record omitted).

On February 25, 2015, following a jury trial, Appellant was convicted of first-degree murder, carrying a firearm without a license, carrying a firearm on a public street in Philadelphia, and possession of an instrument of crime. Appellant filed a notice of appeal on March 24, 2015, followed by a timely Rule 1925(b) statement. He now presents the following, sole issue for our review: "Did the [t]rial [c]ourt err by failing to instruct the jury on Voluntary Manslaughter – Heat of Passion?" Appellant's Brief at 3.

"[T]he relevant inquiry for this Court when reviewing a trial court's failure to give a jury instruction is whether such charge was warranted by the evidence in the case." *Commonwealth v. Baker*, 963 A.2d 495 (Pa. Super. 2008). Additionally, we have stated:

In reviewing a challenge to the trial court's refusal to give a specific jury instruction, it is the function of this Court to determine whether the record supports the trial court's decision. In examining the propriety of the instructions a trial court presents to a jury, our scope of review is to determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. A jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error. Consequently, the trial court has wide

discretion in fashioning jury instructions. The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the appellant was prejudiced by that refusal.

*Id.* at 507 (quoting ***Commonwealth v. Brown***, 911 A.2d 576, 582-583 (Pa. Super. 2006)). Moreover, the Pennsylvania Supreme Court has explained,

> with respect to a "heat of passion" voluntary manslaughter instruction: A voluntary manslaughter instruction is warranted only where the offense is at issue and the evidence would support such a verdict. To support a verdict for voluntary manslaughter, the evidence would have had to demonstrate that, at the time of the killing, appellant acted under a sudden and intense passion resulting from serious provocation by the victim. If any of these be wanting – if there be provocation without passion, or passion without a sufficient cause of provocation, or there be time to cool, and reason has resumed its sway, the killing will be murder.

***Commonwealth v. Sanchez***, 82 A.3d 943, 979-80 (Pa. 2013) (internal quotation marks and citations omitted).

> 'Heat of passion' includes emotions such as anger, rage, sudden resentment or terror which renders the mind incapable of reason. An objective standard is applied to determine whether the provocation was sufficient to support the defense of 'heat of passion' voluntary manslaughter. The ultimate test for adequate provocation remains whether a reasonable man, confronted with this series of events, became impassioned to the extent that his mind was incapable of cool reflection.

***Commonwealth v. Miller***, 987 A.2d 638, 649-50 (Pa. 2009) (internal quotation marks and citations omitted).

Here, the trial court provided the following, well-reasoned explanation for its decision not to include a jury charge for voluntary manslaughter – heat of passion:

> [O]n the day of the murder, nothing occurred that could arguably constitute provocation sufficient for a voluntary manslaughter instruction. The victim, Alvarez, and [Appellant's] wife, Gomez, simply walked into the restaurant and sat down to have dinner. They had no interaction whatsoever with [Appellant]. However, [Appellant] claims that a previous event constituted sufficient provocation. In particular, he argued at trial in support of his request for a voluntary manslaughter instruction that [Appellant] was provoked when his wife and daughter moved out of [his] house because his wife was having a lesbian affair with Gomez. That event, however, occurred about a month prior to the killing. Accordingly, [Appellant's] claimed provocation was too remote in time to justify a voluntary manslaughter verdict.

TCO at 4-5. We agree that the record does not reflect a sufficient cause of provocation to support a heat of passion defense. "As a matter of law, one month is a sufficient time to cool." *Commonwealth v. Dews*, 239 A.2d 382, 382 (Pa. 1968) (concluding that defendant was not entitled to a voluntary manslaughter instruction where the deceased badly beat up the defendant's brother one month prior to the killing).

Appellant avers that the question of whether the evidence indicated sufficient provocation to support a 'heat of passion' voluntary manslaughter defense should have gone to the jury. Appellant's Brief at 17. However, we have stated:

> A trial court must make an initial determination whether sufficient evidence has been presented of serious provocation. *See Commonwealth v. Carter*, 502 Pa. 433, 466 A.2d 1328 (1983) (where evidence does not support finding of manslaughter, court need not submit issue to jury); *Commonwealth v. Dews*, 429 Pa. 555, 239 A.2d 382 (1968) (where no evidence of manslaughter, it is proper to refuse to submit manslaughter issue to jury).

*Commonwealth v. Carr*, 580 A.2d 1362, 1364 (Pa. Super. 1990).  Based on the foregoing, we discern no abuse of discretion by the trial court.

Appellant further argues that "the [t]rial c[]ourt failed to give appropriate weight to the facts leading up to the killing of the victim." Appellant's Brief at 17.  We acknowledge that the Pennsylvania Supreme Court has stated:  "In making the objective determination as to what constitutes sufficient provocation[,] reliance may be placed upon the cumulative impact of a series of related events." *Commonwealth v. McCusker*, 292 A.2d 286, 290 (Pa. 1972).  However, we find Appellant's heavy reliance on *McCusker* to be misplaced.

The issue before the Court in *McCusker* was whether psychiatric evidence was admissible in a murder prosecution for the limited purpose of determining whether the defendant acted in the heat of passion.  To establish sufficient provocation, the appellant relied on the following events:

> [H]is awareness within the last month before the crime that his wife had entered into a meretricious relationship with his step-brother; his knowledge *within minutes of the crime* that his wife was perhaps pregnant with his step-brother's child; and his wife's threat *immediately before the crime* that she was going to leave defendant and take with her his only child.

*Id.* (emphasis added).[1]  Appellant suggests that the facts in the instant case are "almost identical" to the facts in *McCusker* and, therefore, he concludes

---

[1] The Court in *McCusker* did not make a determination as to whether the foregoing events compelled a heat of passion charge.  Rather, it held that psychiatric evidence is admissible as an aid in determining whether the
*(Footnote Continued Next Page)*

that a jury instruction for 'heat of passion' voluntary manslaughter should have been required as a matter of law in the present case. Appellant's Brief at 17.

Although both cases involve the appellant learning of his spouse's affair within a month of committing the crime, *McCusker* is clearly distinguishable from the present case. In *McCusker*, the appellant learned of his wife's pregnancy and was threatened by his wife with custody of their child immediately prior to the crime. These two factors could arguably constitute provocation. Whereas, in the instant case, the record indicates that Appellant had known for some time of his wife's plans to move away with their daughter and there was no interaction or confrontation between Appellant and his wife, Gomez, prior to him shooting Alvarez.

After careful review, we agree with the trial court's assessment that the evidence would not have supported a verdict of voluntary manslaughter.

Judgment of sentence affirmed.

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯

defendant acted in the heat of passion at the time of his offense. *Id.* at 293. Appellant appears to base his argument on the concurring and dissenting opinion, in which Justices Eagen and O'Brien expressed their opinion that the trial court erred in precluding the jury from returning a verdict on the charge of voluntary manslaughter, and that "such a verdict should not have been ruled out as a matter of law." Appellant's Brief at 16-17 (quoting *McCusker*, 292 A.2d at 293).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/17/2016