J-A16043-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARCUS ACIE-GRIFFIN | : | |
| | : | |
| Appellant | : | No. 1039 WDA 2023 |

Appeal from the Judgment of Sentence Entered March 1, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0009792-2019

BEFORE:  KUNSELMAN, J., MURRAY, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:               **FILED:  November 6, 2024**

Marcus Acie-Griffin appeals from the judgment of sentence entered following his convictions for first-degree murder and prohibited offensive weapons.[1] He challenges the sufficiency of the evidence. We affirm.

The trial court aptly summarized the facts presented at Acie-Griffin's jury trial.

> On June 21, 2019, Mr. Acie-Griffin shot and killed Mr. [Kaine] Williams late in the evening. Such was undisputed at trial. **See** Trial transcript ("TT") at 249 (defense counsel acknowledging in closing arguments that it was "conceded that Mr. Griffin cause the death of Mr. Williams").
>
> Prior to killing Mr. Williams, Mr. Acie-Griffin had been in a years-long relationship with Erica Thorpe, and the two had a daughter. **Id.** at 82. On May 25, 2019, Mr. Acie-Griffin discovered Ms. Thorpe in the bedroom at her residence with Mr. Williams at approximately 5:00 a.m. **Id.** at 85 & 96. Seeing the two together, Mr. Acie-Griffin broke into the

---

[1] 18 Pa.C.S.A. §§ 2502(a) and 908(a), respectively.

residence. *Id.* at 85. Indeed, he jumped through a window and started to fight with Mr. Williams. *Id.* at 85-86. Law enforcement eventually was called, and ultimately Ms. Thorpe obtained a "Protection-From-Abuse Order" against Mr. Acie-Griffin. *Id.* at 86.

On the night he killed Mr. Williams, Mr. Acie-Griffin made multiple telephone calls to Ms. Thorpe. *Id.* at 11. In fact, from 10:07 p.m. to the time of the killing later that evening, Mr. Acie-Giffin made approximately forty-one (41) unanswered call to Ms. Thorpe, *id.*, who at the time was with Mr. Williams, with whom she then had a semi-romantic relationship, at Mr. Williams' residence, a location known to Mr. Acie-Griffin, *id.* at 80 & 89.

Ms. Thorpe and Mr. Williams – at approximately 10:30 p.m. or 11:00 p.m. – left Mr. Williams' residence to search for Ms. Thorpe's earring in a car parked "in front of [Mr. Williams'] house." *Id.* at 80. Ms. Thorpe noticed a nearby vehicle's headlights "turn[] on up the street." *Id.* at 81. The car approached the couple, and as it did, Ms. Thorpe recognized the vehicle as being Mr. Acie-Griffin's white Acura. *Id.* Mr. Acie-Griffin, who was driving the white Acura, stopped the vehicle in the "middle of the street right in front of [Mr. Williams'] house[;]" got out of the car with a shotgun; said "[W]hat's up[;]" and then shot and killed Mr. Williams, who had been running away from Mr. Acie-Griffin. *Id.* at 81-84.

Mr. Acie-Griffin then left the scene. He fled from law enforcement in a dangerous, high-speed vehicle chase, which ended when Mr. Acie-Griffin's car drove off the road. *See e.g.*, *id.* at 48-50 & 56-62. Law enforcement ultimately handcuffed Mr. Acie-Griffin, who subsequently wrestled free from the police, escaping on foot towards a wooded area, where he was eventually found lying and hiding "behind a fallen . . . tree." *Id.* at 62-67.

Rule 1925(a) Opinion, filed 12/4/23, at 4-5.

During its instructions to the jury, the court defined malice and circumstances where malice is not present. *See* N.T., 1/30/23, at 299-300, 304-06. It also instructed the jury on voluntary manslaughter. It explained

that a "killing is without malice if the perpetrator acts under circumstances that reduce the killing [to] voluntary manslaughter." *Id.* at 300.

The jury found Acie-Griffin guilty of first-degree murder and prohibited offensive weapons. The trial court sentenced him to life without parole for murder and imposed no further penalty for the weapons conviction. On March 9, 2023, Acie-Griffin filed a timely post-sentence motion. The same day, the court appointed new counsel and granted counsel leave to file an amended post-sentence motion. However, counsel did not file an amended motion. The court entered an order denying the post-sentence motion on August 7, 2023. This appeal followed.

Acie-Griffin raises the following issue:

> Was the evidence insufficient as a matter of law to sustain the conviction for First Degree Murder insofar as the Commonwealth, in violation of the Due Process Clause of the Fourteenth Amendment, failed to prove beyond a reasonable doubt that the Defendant, Marcus Acie-Griffin, acted with the requisite malice?

Acie-Griffin's Br. at 4 (answer of trial court omitted).

We first address the timeliness of this appeal. The question arises because Acie-Griffin filed his notice of appeal more than 30 days after his post-sentence motion was deemed denied by operation of law. A trial court has 120 days to decide a post-sentence motion, and after that time the motion will be considered denied by operation of law. Pa.R.Crim.P. 720(B)(3)(a). "When a post-sentence motion is denied by operation of law, the clerk of courts shall forthwith enter an order on behalf of the court[.]" *Id.* at 720(B)(3)(c). A notice

of appeal must be filed within 30 days after the entry of the order denying the motion. *Id.* at 720(A)(2)(b); Pa.R.A.P. 903(a).

Here, the 120-day period for consideration of Acie-Griffin's post-sentence motion expired on July 7, 2023. However, the clerk of courts did not enter an order on that day. Instead, the clerk entered an order denying the motion the following month, on August 7, 2023. *See* Order of Court, filed 8/7/23; Pa.R.Crim.P. 720(B)(3)(c). Acie-Griffin filed the instant appeal on the 30th day after the entry of the order, September 6, 2023. This appeal is therefore timely. *See Commonwealth v. Perry*, 820 A.2d 734, 735 (Pa.Super. 2003) ("This Court has previously held that, where the clerk of courts does not enter an order indicating that the post-sentence motion is denied by operation of law and notify the defendant of same, a breakdown in the court system has occurred and we will not find an appeal untimely under these circumstances").

We now turn to Acie-Griffin's sufficiency challenge. We review a sufficiency argument pursuant to a *de novo* standard of review:

> [T]his Court must ascertain whether the evidence introduced at trial and all reasonable inferences derived from that evidence, viewed in the light most favorable to the Commonwealth as verdict-winner, was sufficient to establish beyond a reasonable doubt all the elements of first-degree murder. Our standard of review is *de novo* and our scope of review is plenary.

*Commonwealth v. Sanchez*, 82 A.3d 943, 967 (Pa. 2013) (citation omitted).

First-degree murder occurs when there is a "willful, deliberate and premeditated killing." 18 Pa.C.S.A. § 2502(a), (d). The Commonwealth must prove beyond a reasonable doubt that: "(1) a human being was killed; (2) the accused caused the death; and (3) the accused acted with malice and specific intent to kill." **Commonwealth v. Staton**, 38 A.3d 785, 789 (Pa. 2012). "The jury may infer the intent to kill based upon the accused's use of a deadly weapon on a vital part of the victim's body." **Id.** The Commonwealth may sustain its burden by wholly circumstantial evidence, and the trier of fact is free to believe all, part, or none of the evidence. **Sanchez**, 82 A.3d at 967.

"A defendant accused of murder may establish that he or she is guilty, not of murder, but rather of voluntary manslaughter, by proving that, at the time of the killing, he or she was acting under a sudden and intense passion resulting from serious provocation by the victim." **Commonwealth v. Hutchinson**, 25 A.3d 277, 314 (Pa. 2011). Sufficient provocation exists where "a reasonable man who was confronted with the provoking events would become 'impassioned to the extent that his mind was incapable of cool reflection.'" **Id.** at 314-15 (citation omitted). "[I]f there be provocation without passion, or passion without a sufficient cause of provocation, or there be time to cool, and reason has resumed its sway, the killing will be murder." **Id.** at 315.

Acie-Griffin argues that the evidence showed he acted under a sudden and intense passion resulting from serious provocation, negating a finding of malice. He argues that the emotional pain after discovering his girlfriend's

infidelity and seeing her with the victim on the night of murder, "triggered an overwhelming rush/cascade of negative emotions." Acie-Griffin's Br. at 24. He notes that after the shooting he tried to commit suicide and recorded a video of himself where he expressed "that his feelings reacted for him." *Id.* He also likens the facts of his case to those in *Commonwealth v. Voytko*, 503 A.2d 20 (Pa.Super. 1986), and *Commonwealth v. McCusker*, 292 A.2d 286 (Pa. 1972).

In *McCusker*, a defendant charged with murder sought to introduce at trial psychiatric evidence that he acted in the heat of passion. *McCusker*, 292 A.2d at 288. McCusker proffered testimony from clinical professional personnel and his physicians that he was "impassioned at the time of the offense." *Id.* at 289. His witnesses determined that his passion "had as its origins [McCusker]'s mental disorders as well as his recent awareness that his wife had entered into a meretricious relationship with his step-brother and her threat to retain custody of his only child." *Id.* Additionally, minutes before the murder, the appellant discovered that his wife might be pregnant by his step-brother. *Id.* at 290.

The trial court refused to admit the evidence, but our Supreme Court found that ruling was error. *See id.* at 288. In coming to this holding, the Court explained that the "cumulative impact" of a series of events may be considered when determining if the defendant acted in the heat of passion.

> In making the objective determination as to what constitutes sufficient provocation reliance may be placed upon the cumulative impact of a series of related events.

The ultimate test for adequate provocation remains whether a reasonable man, confronted with this series of events, became impassioned to the extent that his mind was 'incapable of cool reflection.'

*Id.* at 290 (footnotes omitted). Once evidence of sufficient provocation has been established the attention then turns to the defendant's reaction to that provocation and involves an inquiry of whether:

- the defendant actually acted in the heat of passion when he committed the killing;

- the provocation directly led to the slaying of the person responsible for the provocation; and

- there was insufficient cooling time thus preventing a reasonable man from using his reasoning faculties and capacity to reflect.

*See id.*

The *McCusker* Court noted that there, the heat of passion evidence included the defendant's mental disorders and his recent discovery of his wife's "meretricious relationship with his step-brother and her threat to retain custody of his only child." *Id.* at 289. Thus, the Court concluded that the psychiatric evidence was "relevant to whether appellant acted in the heat of passion when he committed the act[.]" *Id.* at 288.

In *Voytko*, seven weeks before the killing, the defendant found his wife in bed with the victim. Six weeks later, he and the victim fought. On the morning of the murder, at 5:00 AM, the victim parked at the home of the defendant's wife's parents; defendant's wife was a passenger in his truck. The defendant arrived, found the two together, and shot the victim in the head. At trial, Voytko requested a voluntary manslaughter jury instruction pursuant

to **McCusker**'s statement that the "cumulative impact" of a series of events may be considered in determining whether the defendant acted in the heat of passion as a result of adequate provocation. **Voytko**, 203 A.2d at 23 (citing **McCusker**, 292 A.2d at 290). The trial court refused, and this Court reversed.

We noted in **Voytko** that "the ultimate test for adequate provocation remains whether a reasonable man, confronted with this series of events, became impassioned to the extent that his mind was 'incapable of cool reflection.'" **Id.** (quoting **McCusker**, 292 A.2d at 290). We explained that "there was evidence of a series of events upon which [Voytko] relied to establish adequate provocation" and those events were like those in **McCusker** and had occurred before the killing. **Id.** We thus concluded that the court failed "to instruct the jury regarding the significance of the series of events relied upon by appellant to show provocation." **Id.**

Acie-Griffin's reliance on **Voytko** and **McCusker** is misplaced. In both cases, there was evidence of insufficient cool off time following the provocation. In **Voytko** and **McCusker**, the defendant had learned provoking information very shortly before the killing. Here, however, a month had passed since Acie-Griffin found his girlfriend in bed with the victim. He does not cite any subsequent event that would amount to additional provocation. Furthermore, unlike **Voytko**, here the jury received the provocation instruction. We cannot say as a matter of law that a reasonable person confronted with this series of events would have become "impassioned to the

extent that his mind" would have been "incapable of cool reflection." ***McCusker***, 292 A.2d at 290; ***Hutchinson***, 25 A.3d at 315.

Contrary to Acie-Griffin's argument, the evidence was sufficient to prove the malice and specific intent to kill necessary for first-degree murder. When Thorpe and the victim went out to look for the earring in front of the victim's house, Thorpe saw a car's headlights turn on up the street. N.T., Trial, 1/26/23, at 81. The car stopped in front of the victim's house. Acie-Griffin got out of his vehicle with a shotgun and asked the victim, "[W]hat's up[?]" ***Id.*** at 82-83. He then proceeded to shoot the victim four times as the victim tried to run away. ***See id.*** at 83-84. The gunshots hit the victim in a vital part of his body, namely his head. ***See*** N.T., Trial, 1/27/23, at 193; ***Staton***, 38 A.3d at 789; ***Commonwealth v. Chine***, 40 A.3d 1239, 1242 (Pa.Super. 2012) (concluding the victim's head to be a "vital part of the body"). The evidence was sufficient to prove first-degree murder.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 11/6/2024