J-A15043-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NOELLE THERESA CHEW | : | |
| | : | |
| Appellant | : | No. 2358 EDA 2020 |

Appeal from the PCRA Order Entered November 2, 2020
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0001661-2017

BEFORE: BOWES, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: Filed: August 19, 2021

Noelle Theresa Chew ("Chew") appeals from the Order dismissing her Petition for relief pursuant to the Post Conviction Relief Act ("PCRA"). *See* 42 Pa.C.S.A. §§ 9541-9546. We affirm.

We adopt the PCRA court's summarization of the procedural and factual background of this case as though fully set forth herein. *See* PCRA Court Opinion, 1/15/21, at 1-7. Additionally, we briefly summarize the underlying history as follows.

On January 20, 2017, Chew consumed approximately three Long Island Iced Tea beverages, as well as at least one shot of Fireball Cinnamon whiskey, while at a bar with friends. Shortly thereafter, Chew argued with her paramour, who urged her not to drive. Nevertheless, Chew departed in her vehicle. Thereafter, Chew drove on the wrong side of the road, on

Pennsylvania State Route 309.[1]  Multiple drivers attempted to stop Chew by honking their horns, and many vehicles had to take evasive maneuvers to avoid Chew's vehicle.  Additionally, Chew's paramour and Chew's aunt attempted to call and text Chew to persuade Chew to stop driving.  After several minutes, Chew collided head-on with a vehicle operated by Damian Toalombo, resulting in his death.

Chew filed a timely Notice of Appeal and a Pa.R.A.P. 1925(b) Concise Statement of errors complained of on appeal.

Chew raises the following claim for our review:

Did the [PCRA] court err in dismissing [Chew]'s PCRA Petition where the evidence showed that trial counsel[, Richard Fink, Esquire ("Attorney Fink"),] was ineffective for failing to investigate and present evidence of [Chew]'s mental illness at trial to prove that she lacked the malice necessary to support a conviction for third[-]degree murder?

Brief for Appellant at 4.

We review an order [dismissing] a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level.  This review is limited to the findings of the PCRA court and the evidence of record.  We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error.  This Court may affirm a PCRA court's decision on any grounds if the record supports it.  We grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record.  However, we afford no such deference to its legal conclusions.  Further, where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary.

---

[1] State Route 309 is divided into two southbound lanes and two northbound lanes, which are divided by a concrete barrier.  Chew was driving in the southbound direction, in the northbound lanes.

*Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citations omitted).

Chew argues that Attorney Fink should have presented evidence of her mental health diagnoses of bipolar disorder, alcohol abuse, generalized anxiety disorder, and depression. Brief for Appellant at 12-14. Chew contends that Attorney Fink lacked a reasonable basis for failing to present this evidence, which would have refuted the *mens rea* requirement of third-degree murder. *Id.* at 14-15. Chew, relying on our Supreme Court's decision in *Commonwealth v. McCusker*, 292 A.2d 286 (Pa. 1972),[2] claims that her diagnoses were admissible to dispute the malice requirement of third-degree murder. Brief for Appellant at 13, 15-16.

Counsel is presumed to be effective, and "the burden of demonstrating ineffectiveness rests on [the] appellant." *Commonwealth v. Rivera*, 10 A.3d 1276, 1279 (Pa. Super. 2010).

> To satisfy this burden, an appellant must plead and prove by a preponderance of the evidence that [] (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness there is a reasonable probability that the outcome of the challenged proceeding would have been different. Failure to satisfy any prong of the test will result in rejection of the appellant's ineffective assistance of counsel claim.

---

[2] In *McCusker*, our Supreme Court determined that evidence of a defendant's mental health diagnoses may be admissible to disprove the intent element of first-degree murder, specifically, with regards to the heat of passion defense. *See McCusker*, 292 A.2d at 288-89.

*Commonwealth v. Holt*, 175 A.3d 1014, 1018 (Pa. Super. 2017) (internal citations omitted).

Generally, counsel's assistance is considered effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. *Commonwealth v. Ali*, 10 A.3d 282, 291 (Pa. 2010). Where matters of strategy and tactics are concerned, "[a] finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." *Commonwealth v. Colavita*, 993 A.2d 874, 887 (Pa. 2010) (quotation marks omitted). Further, to demonstrate prejudice, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Commonwealth v. King*, 57 A.3d 607, 613 (Pa. 2012). "[A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceedings." *Ali*, 10 A.3d at 291.

In its Opinion, the PCRA court set forth the relevant law, cogently and thoroughly addressed Chew's claim, and concluded that Chew has failed to satisfy any of the three ineffectiveness prongs. *See* PCRA Court Opinion, 1/15/21, at 8-20. Specifically, regarding the arguable merit prong, the PCRA court determined that Chew's mental illness diagnoses were inadmissible to refute the malice requirement of third-degree murder. *See* PCRA Court

Opinion, 1/15/21, at 8-16; *see also Commonwealth v. Andrews*, 158 A.3d 1260, 1264 (Pa. Super. 2017) (stating that "[u]nder Pennsylvania law, mental illness is not a defense to criminal liability unless the mental illness rises to the level of legal insanity."). Additionally, regarding the reasonable basis prong, the PCRA court determined that Attorney Fink's Affidavit demonstrated a reasonable basis for not presenting evidence at trial of Chew's mental health diagnoses. *See* PCRA Court Opinion, 1/15/21, at 17-19; *see also* Amended Affidavit (Attorney Fink), 8/27/20, at 1-6 (unnumbered)[3] (wherein Attorney Fink detailed that he believed Chew's mental health diagnoses would have been unhelpful and damaging to her defense due to evidence that Chew did not take her prescribed medications, did not follow her doctor's orders regarding her illnesses, and could show Chew as a "dangerous, uncontrollable[,] unstable[,] and repeat offender who could not be helped."); *Ali*, *supra*; *Colavita*, *supra*. After review of the record, we agree with the sound reasoning and determinations of the PCRA court as set forth in its Opinion, and we affirm on this basis. *See* PCRA Court Opinion, 1/15/21, at 8-20.

Order affirmed.

---

[3] Attorney Fink's Affidavit was attached as an Exhibit to Chew's Second Amended PCRA Petition.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/19/21

IN THE COURT OF COMMON PLEAS
BUCKS COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | No. CP-09-CR-0001661-2017 |
| | : | |
| | : | 2358 EDA 2020 |
| v. | : | |
| | : | |
| NOELLE THERESA CHEW | : | POST-CONVICTION |
| | : | RELIEF ACT |
| | : | |

**OPINION**

## I.  **INTRODUCTION**

Appellant, Noelle Theresa Chew ("Ms. Chew" or "Appellant"), has appealed to the

Superior Count of Pennsylvania from this Court's Order dated November 2, 2020, denying and

dismissing her request for collateral relief pursuant to the Post Conviction Relief Act ("PCRA"),

42 Pa.C.S. §9541, *et seq.*

The Court files this Opinion in accordance with Pa.R.A.P. 1925(a).

## II.  **FACTUAL BACKGROUND:  THE UNDERLYING CASE**

On August 9, 2017, following a trial by jury, Appellant Noelle Chew was convicted of

murder of the third degree,[1] homicide by vehicle while driving under the influence,[2] homicide by

vehicle,[3] DUI - general impairment,[4] DUI highest rate of alcohol BAC .16 or higher,[5] and

---

[1] 18 Pa.C.S. §2502(c).
[2] 75 Pa.C.S. §3735(a).
[3] 75 Pa.C.S. §3732(a).
[4] 75 Pa.C.S. §3802(a)(1).
[5] 75 Pa.C.S. §3802(c).

1



involuntary manslaughter.[6] These charges were the result of a motor vehicle accident, solely caused by Ms. Chew, which resulted in the death of twenty-four (24) year old Damien Toalombo.

On January 18, 2018, this Court sentenced Ms. Chew on Count One, murder of the third degree, to imprisonment at a state correctional facility for not less than six and one-half (6 ½) years nor more than twenty-four (24) years. On Count Two, homicide by vehicle while driving under the influence, she was sentenced to a period of imprisonment at a state correctional facility for not less than five (5) years nor more than ten (10) years, running concurrently with the sentence on Count One. On Counts Three and Four, no additional penalties were imposed. On Count Five, Driving Under the Influence, highest rate of alcohol, Appellant was sentenced to imprisonment for not more than three (3) months nor more than five (5) years, running concurrently with the sentences on Counts One and Two, along with a mandatory fine of one thousand five hundred dollars ($1,500). Appellant was also ordered to perform two hundred (200) hours of community service.[7] Ms. Chew appealed from her judgment of sentence to the Superior Court of Pennsylvania. The Superior Court, at 217 A.3d 356 (Pa. Super. 2019), subsequently affirmed this Court's decision denying Ms. Chew's post-sentence motions, on May 1, 2019.

This Court's opinion of June 26, 2018 addressing Ms. Chew's direct appeal, which was published at 91 Bucks L. Rep. 354 (2018), summarized the underlying facts pertinent to the jury's verdict, as follows:

---

[6] 18 Pa.C.S. §2501.
[7] Trial Court Opinion p. 2.

2

## 1. Appellant Consumed a Substantial Amount of Alcohol During the Evening and Nighttime Hours of January 20, 2017, Leading up to the Fatal Crash

On January 20, 2017, Tiffany Bates had dinner with her friend, Appellant Noelle Chew. They had known each other since middle school, and that evening they had dinner together at TGI Friday's restaurant in Quakertown, PA. Ms. Bates testified that during dinner, at approximately 6:15 p.m., Appellant drank a Long Island Ice Tea. Ms. Bates stated that after dinner, the two went to another establishment, JT Bankers, in Perkasie, PA, arriving there at approximately 7:30 p.m. When they arrived, Appellant consumed a second Long Island Ice Tea. Ms. Bates testified that she left JT Bankers between 10-10:30 p.m.. Before she left she witnessed Appellant consume her second Long Island Ice Tea at JT Bankers, which was Ms. Chew's third of the evening.

The jury also heard the testimony of Katie Outland, a bartender employed at JT Bankers. Ms. Outland knew Appellant from a prior job, where both had worked as bartenders. She testified that in addition to serving Ms. Bates and Appellant their respective wine and Long Island Ice Tea drinks when they arrived, she also served both Appellant and a male friend a "shot" of Fireball Cinnamon whiskey "at some point after nine o'clock."

Jared Giangiulio testified that he was the bartender who served Appellant the second Long Island Ice Tea at JT Bankers, at approximately 9:00 p.m.. He explained the large amount of alcohol which goes into making a Long Island Ice Tea as five (5) half-shots: one half-shot of vodka, one half-shot of gin, one half-shot of tequila, one half-shot of rum, and one half-shot of triple sec. One Long Island Ice Tea drink, then, is the equivalent of two-and-one-half alcoholic drinks, which usually are made with (only) one shot of alcohol.

The jury also heard the testimony of Tina Sabatini, who has owned JT Bankers for twenty (20) years. She corroborated Mr. Giangiulio's testimony that a Long Island Ice Tea is equivalent to two-and-one-half alcoholic drinks. Additionally, she testified that a review of the receipts from the bar that evening accurately evidenced the drinks consumed by Appellant, as testified to by the bartenders on staff that night.

Christian Cagliari testified that he had been dating Appellant for nearly one year as of January 20, 2017. He arrived at JT Bankers between 9 and 9:30 p.m. that night. Mr. Cagliari testified that when Appellant left the bar "around elevenish", she was angry and "pissed. Emotional." They were involved in an argument at that time and Appellant essentially told Mr. Cagliari that she was ending their relationship. Despite Mr. Cagliari testifying at trial that he only witnessed Appellant drinking water at JT Bankers, and that he did not believe she was intoxicated when she left the bar, a review of his text conversation with Appellant on the night of January 20, 2017, into the early morning hours of January 21, 2017, when Mr. Toalombo was killed, presented a different story. Mr. Cagliari claimed that it was only after-the-fact that he assumed Appellant was intoxicated. Upon review of the Commonwealth's text exhibit, Mr. Cagliari admitted that the Exhibit accurately reflected his text conversation with Appellant on January 21, 2017. Mr. Cagliari read several sections of the texted messages, including his writings which

3

repeatedly stated: "Please tell me where you're at so I can come get you." "...you should never have drove." "...hope you get home safe." "...I know you're drunk right now and you don't mean half the stuff you say...please at least let me know when you make it home?" In response at that time, Appellant called Mr. Cagliari a "snitch" for listening to her parents, and repeatedly cursed at him, telling him she had found a new relationship. Mr. Cagliari testified that although Appellant did not answer many of his repeated (19) phone calls, he and Appellant were on the phone when he heard the crash, followed by Appellant crying.

Appellant's aunt, Patricia Chew, testified that she called Mr. Cagliari prior to the crash because she was concerned about Appellant, who had called her prior to the crash and was crying hysterically. Patricia Chew asked Appellant to pull off the road. While she was not immediately concerned that Appellant was drunk, approximately twenty-five (25) minutes later, she began to think so.

## 2. Despite Repeated Warnings, Appellant had Been Driving the Wrong Way on Route 309 for Approximately Ten (10) Minutes Prior to the Head-On Fatal Crash.

The jury heard the testimony of Peter Granite, who was driving northbound on Route 309 around midnight on January 21, 2017. He described the highway (Route 309) as consisting of two southbound travel lanes and two northbound lanes, divided by a concrete barrier. He was driving in the right lane of the northbound section, and he described his confusion as he realized that Appellant was driving southbound toward him in the left northbound lane. Fearing that he would scare Appellant into driving into his lane, he therefore waited to honk and flash his lights at her until their vehicles were fairly close. Mr. Granite testified that as Appellant drove past him, he pressed upon his horn continuously in order to alert and warn her. He testified that while it may have been a "little bit" foggy, there were no weather conditions that evening which created any difficulties in seeing other vehicles.

Thomas Murray, who was traveling southbound on Route 309 that night, also testified. He explained to the jury that while he was traveling southbound, he observed Appellant also traveling southbound, but on the wrong side of the concrete barrier, in the northbound lanes. He described how he positioned his car alongside Appellant's car, and flashed his lights and beeped his horn five or six (5 or 6) times in an effort to get her attention. He described the weather as a clear night, without rain or snow. Mr. Murray testified that he observed ten (10) to fifteen (15) vehicles traveling northbound which passed Appellant's southerly traveling car. Appellant's vehicle made no evasive maneuvers, but some of the properly traveling northbound vehicles swerved as they approached Appellant's vehicle. Mr. Murray observed the crash that resulted in Mr. Toalombo's death.

Mamadou Diallo was also traveling southbound on Route 309 that night. He testified that there were no weather conditions that prevented him from properly entering onto Route 309, or from safely traveling on the highway that night. Upon realizing Appellant was driving on the wrong side of the road, he positioned himself in an effort to draw her attention to the reality that she was traveling on the wrong

4

side of the highway. He estimated that he followed Appellant's vehicle for at least ten (10) minutes. He testified that he was "beeping [his] horn, trying to make her stop. Because one of her windows was down so I was waving my hand ...to let her know she was traveling on the wrong track." Mr. Diallo testified that at one point Appellant turned and looked at him because he was waving his hand, but she continued to drive the wrong way. Mr. Diallo observed that Appellant escaped hitting at least three (3) vehicles, "...a big truck that was coming. She missed that. And there was like two other small cars that she had missed." Recalling his witness statement provided to a police officer the night of the crash, Mr. Diallo confirmed that he observed two (2) tractor trailers take evasive actions to avoid hitting Appellant's vehicle. Like Mr. Murray, Mr. Diallo observed the crash that killed Mr. Toalombo. Mr. Diallo did not observe any fog while he traveled on Route 309 in the area where the crash occurred.

Among the other witnesses from whom the jury heard was Dr. Sherri Kacinko, who was qualified and therefore permitted to testify as an expert in forensic toxicology. Dr. Kacinko is employed by National Medical Services Labs in Willow Grove, PA. Prior to testifying in this matter, Dr. Kacinko reviewed the lab reports related to the blood taken from Appellant on January 21, 2017, following the crash. Dr. Kacinko verified that her signature on the lab reports certified that she had reviewed the process and analysis of the blood draw. She testified that Appellant's BAC was .204 at the time her blood was drawn at 4:04 a.m. on January 21, 2017. Dr. Kacinko testified that a BAC of .204 would cause an individual to experience "marked intoxication" which includes being unsteady on one's feet, a staggering gait, slurred speech, worsening visual acuity, blurred vision or double vision, impact to hand, eye, or muscle coordination, and lost ability to perform complex tasks, or to multi-task. Dr Kacinko explained a "back-extrapolation or back-calculation" to the jury, which is the methodology employed to calculate a person's earlier BAC, based on how alcohol is metabolized in one's system. There is a constant amount of alcohol that is metabolized every hour. It is a relatively narrow range, from .01 to .03 per hour, with alcoholics typically at .03, metabolizing faster than non-alcoholics. Dr. Kacinko provided a pertinent example as follows: using a .01 metabolic factor, and multiplying .01 by four (4), the number of hours which had elapsed between the time the subject crash had occurred and the time the blood was drawn, equals .04. Adding .04 to Appellant's BAC at 4:04 in the morning calculates back to an estimated BAC of .24 for Appellant at the time Mr. Toalombo was killed.

Dr. Kacinko provided her opinion based upon a reasonable degree of medical certainty, having considered all of the information she was provided about this case, including Appellant's BAC at the time of the blood draw, Appellant's history of drinking, and the facts as to the time Appellant last consumed alcohol on the night of January 20, 2017. Dr. Kacinko expressed her opinion that given the totality of the facts and circumstances, Appellant was incapable of safe driving as of the time of the crash on January 21, 2017.[8]

---

[8] Trial Court Opinion pp. 3-8 (internal citations omitted). The trial record includes testimony and evidence indicative of Appellant's uncooperative and combative behaviors which prevented police and medical professionals from obtaining a blood draw until several hours after the crash.

## III. **PROCEDURAL HISTORY**: **POST-CONVICTION AND POST-DIRECT APPEAL**

Appellant initiated PCRA proceedings on September 17, 2019, by filing a timely *pro se* PCRA petition. By Order dated November 18, 2019, this Court appointed the Bucks County Public Defender's Office to represent the Appellant. The same Order directed counsel to file an Amended PCRA Petition on or before January 2, 2020. On December 9, 2019, Appellant's counsel filed a motion for extension of time to file an Amended PCRA Petition. This Court granted the motion by Order dated December 16, 2019. The December 16, 2019 Order also directed the Commonwealth to file an Answer within 30 days of the date of the filing of Appellant's Amended PCRA Petition. Appellant filed her Amended PCRA Petition on March 11, 2020.

A March 17, 2020 Order instituted a judicial emergency as a result of growing concerns surrounding the COVID-19 pandemic. Consequently, the majority of judicial operations at the Bucks County Court of Common Pleas were suspended between March 17, 2020 and May 31, 2020. The Court reopened, operating on a modified schedule, on June 1, 2020.

The Commonwealth filed its Answer to Appellant's Amended PCRA Petition on July 9, 2020. A status conference was held by this Court on the record on July 16, 2020, wherein perceived deficiencies in Appellant's pleadings were discussed. N.T. 7/16/20, pp. 2-4. On July 17, 2020, this Court issued an Order directing Appellant to file a Second Amended PCRA Petition on or before August 31, 2020. The Order further directed Appellant "to identify in the Second Amended PCRA Petition, through the required pleading and affidavit: a) the actual content of the proposed evidence that Petitioner alleges counsel should have obtained and introduced at trial; b) in what manner the proposed evidence would negate the third degree murder malice element under the circumstances of the instant case; and c) the legal authority by

6

which the proposed evidence is admissible at trial under Pennsylvania law and under the circumstances of the instant case." Order, filed July 17, 2020 at p. 2.

This Court directed the Commonwealth to file an Answer to Appellant's Second Amended PCRA Petition not later than September 30, 2020. Appellant filed her Second Amended PCRA Petition on August 27, 2020, and the Commonwealth subsequently filed its Answer on September 29, 2020.

On October 7, 2020, this Court filed a Notice of Intent to Dismiss Appellant's Second Amended PCRA Petition without a hearing pursuant to Pennsylvania Rule of Criminal Procedure 907. We noted that Petitioner failed to plead or set forth a claim which would entitle her to post-conviction collateral relief or which would warrant an evidentiary hearing. Appellant replied to the Court's Notice of Intent to Dismiss on October 23, 2020.

On November 2, 2020, this Court denied and dismissed Appellant's request for post-conviction relief pursuant to 42 Pa.C.S. §9541, *et seq.* Thereafter, Appellant filed a timely Notice of Appeal to the Superior Court on December 1, 2020. Appellant subsequently filed a Concise Statement of Matters Complained of on Appeal on December 21, 2020. Appellant's Concise Statement, reproduced *verbatim* below, raises one substantive claim of error for this Court to address in this Opinion.

## IV. APPELLANT'S CONCISE STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

1. Whether the Court erred in dismissing Appellant's PCRA petition where the evidence showed that trial counsel was ineffective for failing to investigate and present evidence of Appellant's mental illness at trial to prove that she lacked the malice necessary to support a conviction for Third Degree Murder?

7

## V.    DISCUSSION

### A.  Legal Principles Pertinent to Collateral Claims of Ineffective Assistance of Counsel

Pennsylvania's Post Conviction Relief Act, 42 Pa.C.S. § 9541, *et seq.*, outlines the

procedure by which a defendant may collaterally attack her conviction or sentence on the basis

that it was obtained as a consequence of one or more violations of constitutional rights. To be

eligible for relief under the Act, Ms. Chew must plead and prove by a preponderance of the

evidence that her conviction falls within or was the result of at least one of the violations

outlined in the following provisions:

> (i)    A violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.
>
> (ii)   Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.
>
> (iii)  A plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent.
>
> (iv)   The improper obstruction by government officials of the petitioner's right of appeal where a meritorious appealable issue existed and was properly preserved in the trial court.
>
> (v)    [deleted]
>
> (vi)   The unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced.
>
> (vii)  The imposition of a sentence greater than the lawful maximum.
>
> (viii) A proceeding in a tribunal without jurisdiction. 42 Pa.C.S. § 9543(a)(2).

Here, Appellant relies on 42 Pa.C.S. § 9543(a)(2)(ii), the ineffective assistance of counsel

provision recited above, as her sole basis for relief.  Ms. Chew alleges that her trial counsel was

ineffective for failing "to hire a mental health professional to evaluate [Appellant] when

[Appellant's] mental health status should have been used to negate the malice element required

8

for a Third Degree Murder conviction." Second Amended Post-Conviction Relief Act Petition, ¶31a.

In support of her claim, Ms. Chew relies upon a post-trial expert report authored by psychologist Steven Samuel, Ph.D.. In his report, based upon an interview of Ms. Chew conducted subsequent to trial, and psychological testing conducted post-trial, Dr. Samuel opines that Ms. Chew suffers from certain mental health disorders, including bipolar disorder, alcohol abuse, generalized anxiety disorder, and depression. *See* Post Conviction Relief Act Petition, Exhibit 3, Affidavit of Steven Samuel, Ph.D., p. 1, ¶ 3. Dr. Samuel concludes, in a general fashion, that Ms. Chew's disorders and her alcohol intoxication "contributed" to her behavior and/or inability to control her behavior at the time of the crash of January 21, 2017 and after the crash.[9]

The legal standards applicable to claims of ineffective assistance of counsel are well established. "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." Commonwealth v. Smith, 17 A.3d 873, 883 (Pa. 2011) (*citing* Commonwealth v. Johnson, 966 A.2d 523, 532 (Pa. 2009); Commonwealth v. Dennis, 950 A.2d 945, 954 (Pa. 2008)). "To obtain relief, a PCRA petitioner must demonstrate that counsel's performance was deficient and that the deficiency prejudiced the petitioner." Id., *citing* Strickland v. Washington, 466 U.S. 668, 687 (1984).

---

[9] In his report, Dr. Samuel addresses Appellant's behaviors only in general terms, makes improper legal conclusions, and fails to explain how or in what manner the element of malice would be rebutted. Further, the expert's opinions regarding Petitioner's "behaviors" and purported "inability to control" would, on its face, be inadmissible at trial. Diagnosis of a mood disorder, or evidence that a defendant lacked the ability to control her actions, or that she acted impulsively (i.e. irresistible impulse) is not relevant or admissible in Pennsylvania. Commonwealth v. Weinstein, 451 A.2d 1344, 1347 (Pa. 1982); Commonwealth v. Walzack, 360 A.2d 914 (Pa. 1976); Commonwealth v. Sasse, 921 A.2d 1229, 1237 (Pa. Super. 2007).

More specifically, to establish a claim of ineffective assistance of counsel, petitioner must plead and prove, by a preponderance of the evidence, that: (1) the underlying claim has arguable merit; (2) counsel lacked a reasonable basis for their actions or failure to act; and (3) petitioner suffered actual prejudice as a result of counsel's error or omission. Commonwealth v. Pierce, 527 A.2d 973, 975 (Pa. 1987) (adopting, as a three-pronged test, the standard for ineffective assistance of counsel claims set forth by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 686 (1984)). "Boilerplate allegations of ineffectiveness do not establish a defendant's burden (warranting) relief." Commonwealth v. Colon, 230 A.3d 368, 374 (Pa. Super. 2020) (*citing* Commonwealth v. Jones, 811 A.2d 994, 1003 (Pa. 2002)). If a petitioner fails to plead or meet any elements of the above-cited *Pierce* test, the claim must fail. *See* Commonwealth v. Burkett, 5 A.3d 1260, 1272 (Pa. Super. 2010). *See also* Commonwealth v. Cook, 952 A.2d 594, 614 (Pa. 2008) ("A failure to satisfy any one of the three prongs of the test for ineffectiveness requires rejection of the claim.").

A "petitioner is not entitled to a PCRA hearing as a matter of right; the PCRA court can decline to hold a hearing if there is no genuine issue concerning any material fact and petitioner is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings." Colon, 230 A.3d at 374-75, (quoting Commonwealth v. Smith, 121 A.3d 1049, 1052 (Pa. Super. 2015) (*internal citations omitted*)).

For reasons discussed in detail below, this Court has concluded that there is no genuine issue of material fact to be determined in connection with Ms. Chew's ineffectiveness claim under 42 Pa.C.S. § 9543(a)(2)(ii). As a result, Appellant has failed to plead or set forth a cognizable claim which would entitle her to post-conviction collateral relief under the Act, and no purpose would be served by conducting any further proceedings.

10

**B. As a matter of law, Appellant has failed to establish an underlying claim of arguable merit**

The first prong of the *Pierce* test requires an appellant to establish that the underlying claim is of arguable merit. The basis of Ms. Chew's ineffective assistance of counsel claim is that the trial counsel failed to obtain and introduce evidence of her mental illness to rebut the element of malice required for third degree murder. *See* Second Amended PCRA Petition, at ¶ 31.

Appellant's argument lacks merit, since the law in this Commonwealth is well-settled that evidence of defendant's mental health diagnoses is inadmissible as a defense to rebut the *mens rea* of malice supporting a conviction for third degree murder. Appellant has failed to provide this Court with any persuasive legal authority to prove that such mental health evidence is admissible in cases such as the instant one. We address this guiding principle of Pennsylvania law in more detail below.

*i.*     *Malice requisite to a finding of guilty of Murder of the Third Degree*

This Court's opinion addressing Ms. Chew's direct appeal discussed the law of malice in relation to third degree murder as follows:

> To support a murder conviction, the Commonwealth must prove a defendant committed the killing with malice. The Pennsylvania Superior Court has long held that "malice comprehends not only a particular ill-will, but [also a] a wickedness of disposition, hardness of heart, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured." Commonwealth v. Crosley, 170 A.3d at 767. (internal citations omitted). Additionally, malice may be found where the defendant consciously disregards an unjustified and extremely high risk that his or her actions might cause death or serious bodily injury. Commonwealth v. Kling, 731 A.2d 145 (Pa. Super. 1999); Commonwealth v. Pigg, 571 A.2d 438, 441 (Pa. Super. 1990)(internal citations omitted).
>
> Although historically it has not been frequently prosecuted as a murder case, a death caused by vehicular incident may give rise to a conviction of third-degree murder. The Pennsylvania Supreme Court, in Commonwealth v. Taylor,

11

337 A.2d 545 (Pa. 1975) "found that the requisite element of malice was present where an intoxicated automobile driver traveling at a high speed struck and killed a child on a bicycle near a playground." *Id.* at 548. In finding the evidence sufficient to establish the presence of malice, and in therefore sustaining the third degree murder conviction, the Supreme Court noted the evidence presented to the trier of fact, which included "the intoxicated condition of the driver, the distance the bodies and bicycles were propelled upon impact, [appellant's] awareness that this was an area where children were likely to traverse, (and) the absence of any physical or climatic condition which could explain or contribute to the happening of the accident..." *Id.*

To constitute malice in relation to a vehicular crash, our appellate courts have indicated that the evidence must demonstrate "sustained, purposeful recklessness necessary to prove a knowing and conscious disregard that death or serious bodily injury was reasonably certain to occur." Commonwealth v. Kling, 731 A.2d at 150. In essence, to constitute the requite malice, a driver must have had sufficient time to "calculate and reflect" upon the consequences of his or her conduct. *Id.*

Common fact patterns where our appellate courts have found the requisite malice to support third degree murder convictions have included driver intoxication in combination with "near misses" occurring almost immediately prior to the crash. *See,* Commonwealth v. Packer, 146 A.3d 1284 (Pa. Super. 2016); Commonwealth v. Miller, 955 A.2d 419 (Pa. Super. 2008); Commonwealth v. Kling, 731 A.2d 145. Another frequent factor has included an intoxicated driver who has ignored repeated pleas to stop driving or to slow down prior to the crash. *See,* Commonwealth v. Scales, 648 A.2d 1205 (Pa. Super. 1994); Commonwealth v. Urbanski, 627 A.2d 789 (Pa. Super. 1993); Commonwealth v. Pigg, 571 A.2d 438.

We went on to articulate a summary of the facts which constituted the requisite

malice supporting Appellant's conviction of third degree murder:

It is clear, then, as a matter of law, that the overwhelming testimony and evidence presented in the instant case, included Appellant's .24 BAC, three times the legal limit as of the time of the crash, along with the eyewitness testimony regarding how long Appellant traveled on the highway in the wrong direction of traffic, the eyewitness testimony of other drivers on the road who for extended periods immediately preceding the crash tried to get Appellant's attention and warn her she was traveling in the wrong direction, and the testimony of Appellant's aunt and boyfriend who described their warnings to her that she was driving while intoxicated prior to the crash. These facts, in combination with the testimony establishing the absence of any significantly dangerous or deceptive road conditions or climatic conditions which would have potentially contributed to Appellant entering a highway and continuing to drive in the wrong direction for 10 minutes prior to the crash, were more than sufficient for the jury to find that Appellant acted with malice. Accordingly, the evidentiary record amply supports the Appellant's conviction of third decree murder.

12

The Superior Court, upon affirming our conclusion as to requisite malice, commented as follows:

> Appellant consciously disregarded her boyfriend's and aunt's pleas to stop the vehicle, consciously disregarded multiple warnings from other drivers, and consciously disregarded the havoc she created on the highway. Indeed, she kept driving, uncaring for any of it. Appellant's conduct, therefore, under the circumstances above-described, displayed conscious disregard for an unjustified and extremely high risk that her actions might cause death or serios bodily injury. This is no different from firing a gun in a crowd or playing Russian roulette. Indeed, driving under the influence for an extended period of time on the wrong side of the highway at nighttime despite all sorts of warnings against it is virtually guaranteeing some manner of accident will occur through the intentional doing of an uncalled-for act in callous disregard of its likely harmful effects on others.

Commonwealth v. Chew, 217 A.3d 356.

### ii.    *A defendant's mental health diagnoses may be admissible in cases where legal insanity is at issue; however, such diagnoses are inadmissible to negate the mens rea required to prove malice in third degree murder cases such as the present case.*

"Under Pennsylvania law, mental illness is (generally) not a defense to criminal liability unless the mental illness rises to the level of legal insanity[.]" Commonwealth v. Andrews, 158 A.3d 1260, 1264 (Pa. Super. 2017). *See also* Commonwealth v. Hatfield, 579 A.2d 945, 947 (Pa. Super. 1990). "Mental illness under our Crimes Code will not be permitted to eliminate the *mens rea* requirement for culpability or otherwise criminal conduct unless the M'Naghten Test is met." Commonwealth v. Sohmer, 546 A.2d 601, 606 (Pa. 1988). Ms. Chew has neither pled nor has she ever proffered a defense of legal insanity. *See* 18 Pa. C.S. §315(b) (setting forth Pennsylvania's insanity defense).

A person "who as a result of mental disease or defect, lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law," may be found "guilty but mentally ill." 18 Pa. C.S. §314(c)(1). Again, however, evidence

13

of a defendant's mental illness is only admissible when insanity, as defined under 18 Pa.C.S. § 315, is raised as a defense at trial, or when a defendant pleads guilty to the crimes. *See* 18 Pa. C.S. §314(a)-(b). Even if evidence of a defendant's mental illness is proffered as a defense, "a finding of guilt with mental illness does not negate the intent element of crimes," and is "not determinative of the defendant's criminal responsibility or culpability; rather, it goes to an aspect of his post-verdict disposition." Commonwealth v. Rabold, 951 A.2d 329, 340, 345 (Pa. 2008). *See also* Commonwealth v. Eck, 654 A.2d 1104, 1107 (Pa. Super. 1995) ("Pennsylvania courts have repeatedly held that mental illness is not a defense to criminal conduct[,] and the constitutionality of (the Guilty but Mentally Ill statute) has repeatedly been upheld).

Accordingly, since Ms. Chew did not offer the defense of insanity at trial, and Ms. Chew did not plead guilty in order to raise mental illness at the time of sentencing, proffered evidence of her mental illness was inadmissible at trial in the effort to negate the *mens rea* requisite to the jury's conviction of third degree murder.

### iii.    *A defendant's mental health diagnoses may be admissible to attempt to reduce first degree murder to a lesser degree of homicide or to support a finding that a defendant acted in the heat of passion. However such diagnoses are inadmissible for the purposes of negating a third degree murder charge*

In addition to potentially supporting a finding of legal insanity, evidence of mental illness in first degree murder cases may otherwise be admissible to reduce a charge of first degree murder to a lesser degree of homicide. "[P]sychiatric testimony is competent in Pennsylvania on the issue of specific intent to kill if it speaks to mental disorders affecting the cognitive functions necessary to formulate a specific intent. Where [. . .] it does not, it is irrelevant and hence inadmissible." Commonwealth v. Weinstein, 451 A.2d 1344, 1347 (Pa. 1982) (*internal citation omitted*). In the instant case, it is uncontroverted that Ms. Chew was not charged with first degree murder, nor did the evidence support any finding that she had a specific intent to kill the victim

14

or anyone else on the night of January 20, 2017 or the early morning hours of January 21, 2017, when the fatal head-on crash took place.

Ms. Chew's Second Amended Petition requests that this Court "extend" the holding in Commonwealth v. McCusker, 292 A.2d 286 (Pa. 1972), to the present case, because "both cases deal with mentally ill defendants who have been charged with murder." Second Amended PCRA Petition, at ¶ 38. However, since the similarities between McCusker and Ms. Chew's case begin and end with the aforesaid generalized statement, Appellant's reliance on McCusker is misplaced.

In McCusker, the Pennsylvania Supreme Court held that "psychiatric evidence is admissible in a murder prosecution for the limited purpose of determining whether a defendant acted in the heat of passion" to reduce the degree of homicide from murder to voluntary manslaughter. *Id.* at 287. Both first degree murder and voluntary manslaughter require the specific intent to kill; however, third degree murder does not. *See* Commonwealth v. Mason, 378 A.2d 807, 808 (Pa. 1977) ("a necessary element of both murder in the first degree and voluntary manslaughter is the specific intent to kill."); Commonwealth v. Pitts, 404 A.2d 1305, 1308 (Pa. 1977) ("Murder of the third degree is a killing done with legal malice but without specific intent to kill; [v]oluntary manslaughter, on the other hand, involves the specific intent to kill but, by reason of passion and provocation, contains no legal malice.").

As the Pennsylvania Supreme Court has noted, a heat of passion defense "seeks to show that the defendant is guilty of voluntary manslaughter, not murder, by proving that at the time of the killing he or she was acting under a sudden and intense passion resulting from serious provocation by the victim." Commonwealth v. Mason, 130 A.3d 601, 627-628, (Pa. 2015). *See* also, 18 Pa.C.S. §2503(a).

15

A heat of passion or passion/provocation defense, as a matter of law and based on the facts here, was obviously unavailable to Ms. Chew. There was no evidence of either a sudden and intense passion which affected Appellant on January 20-21, 2017; nor, importantly, was there any provocation whatsoever, let alone serious provocation, by the deceased victim.[10]

Consequently, as neither specific intent to kill nor heat of passion are at issue in this case, the legal principles enunciated in McCusker provide Ms. Chew with no lawful defense regarding the issue of malice requisite to her third degree murder conviction.[11]

### iv. *Even if this Court were inclined to overrule established Pennsylvania precedent, Appellant would still not be entitled to relief under 42 Pa.C.S. § 9543(a)(2)(ii).*

Of note, even if this Court were inclined to overrule Pennsylvania precedent regarding the inadmissibility of mental illness as a defense to criminal liability for third degree murder, as Ms. Chew requests, this would not render Ms. Chew's trial counsel ineffective for failing to seek to introduce evidence as to her mental illness at the time of her trial, more than three (3) years ago, and she still would not be entitled to collateral relief. "[C]ounsel's stewardship must be judged under the existing law at the time of trial and counsel cannot be deemed ineffective for failing to predict future developments or changes in the law." Commonwealth v. Colon, 230 A.3d 368, 377 (Pa. Super. 2020).

Based on the foregoing, Ms. Chew has not established, and is unable to meet, the first prong of the *Pierce* ineffectiveness test. Counsel cannot be deemed ineffective for failing to

---

[10] The case of Commonwealth v. Potts, 406 A.2d 1007 (Pa. 1979), to which Appellant also cites in support of her claim, is clearly inapplicable. The Potts court, relying on McCusker, addressed a claim of ineffective assistance of counsel for counsel's failure to introduce psychiatric evidence to reduce the First Degree Murder charge to Voluntary Manslaughter, in support of a heat of passion defense.

[11] We note that mental health evidence is also admissible in Pennsylvania when a defendant seeks to reduce a first degree murder charge (specific intent to kill) to voluntary manslaughter (intent to kill without malice), based upon the defense of unreasonable belief in imminent death or serious bodily injury. Commonwealth v. Briggs, 12 A.3d 291, 306 (Pa. 2011). Needless to say, this defense is not applicable to the facts of the instant case.

16

raise or pursue a claim lacking even arguable merit at the time of trial. *See* <u>Commonwealth v. Ligons</u>, 971 A.2d 1125, 1156 (Pa. 2009).

> **C. Appellant has failed to plead or prove by a preponderance of the evidence that her trial counsel had no reasonable strategic basis for his failure to obtain and attempt to introduce evidence of Appellant's mental illness at trial.**[12]

As to the second prong of the *Pierce* test, Appellant only avers that "[n]o reasonable basis existed for trial counsel's failure to obtain and introduce evidence of petitioner's mental illness to rebut the Commonwealth's assertion that she acted with malice." <u>Second Amended PCRA Petition</u>, ¶ 42. As stated, evidence of Ms. Chew's mental illness clearly was not admissible at trial. However, even if such evidence were admissible, trial counsel's affidavit, provided by Appellant, establishes Ms. Chew's inability to meet the second prong of the ineffectiveness test, since this Court finds that trial counsel's strategy as to the mental health issues was reasonably sound.

In summary, trial counsel explained his rationale as follows: he was aware of Ms. Chew's mental health history, and discussed such history with Appellant and her mother. He stated that he did not obtain a mental health evaluation or seek to introduce evidence of Ms. Chew's mental health issues as a strategy based upon protecting her, in that proffering such information would "open the door" and likely lead to the introduction of evidence by the Commonwealth which was even more harmful to Appellant as to the issue of malice. *See* <u>Second Amended PCRA Petition</u>, Exh.: <u>Amended Affidavit of Richard Fink, Esq.</u>, ¶¶ 3-6.

In his affidavit, trial counsel identified the damaging evidence contained within Ms. Chew's medical records and/or from witnesses known to the Commonwealth, which included

---

[12] While the law is clear that Appellant's failure to satisfy any one of the three prongs of the <u>Pierce</u> test regarding claims of ineffective assistance of counsel is enough to mandate denying collateral relief, we address the second and third prongs in Sections Ⅴ C and Ⅴ D of this Opinion for the sake of completeness.

17

her continuous abuse of alcohol, prior drunk driving episodes, her disregard or rejection of medical advice and/or treatment, and multiple prior warnings to Ms. Chew not to drive while intoxicated. *Id.* at ¶6. At trial, counsel instead argued against a finding of the malice requisite for third degree murder by relying on Appellant's status as a young mother, who was under substantial pressures, and who, on this isolated occasion, drank too much alcohol before driving. *Id.* at ¶7.

Appellant has not pled or argued the manner in which counsel's trial strategy was allegedly erroneous or unsupported by the law. Appellant has not proffered any additional testimony or facts which would conflict with the content of trial counsel's affidavit concerning his strategy.

This Court finds, then, that trial counsel's articulated strategy had "some reasonable basis designed to effectuate his client's best interests[.]" Commonwealth v. Speight, 677 A.2d 317, 322 (Pa. 1996). Moreover, since evidence of Appellant's mental illness was not admissible in this case, Ms. Chew is unable to demonstrate that "no competent counsel" would have chosen differently or, even if the proffer had been attempted, that the inadmissible evidence "offered a significantly greater potential chance of success." Commonwealth v. Colon, 230 A.3d 368, 374 (Pa. Super. 2020).[13]

Thus, Appellant failed to establish the second prong of the *Pierce* test; indeed, her proffered evidence demonstrated her inability to do so.

---

[13] Under the second prong of the Pierce test, the PCRA petitioner must prove that the "alternative not chosen offered a potential for success substantially greater than the course actually pursued." Commonwealth v. Hanible, 30 A.3d 426, 439 (Pa. 2011) (citation omitted).

**D. Appellant has failed to plead or prove by a preponderance of the evidence that she suffered actual prejudice as a result of trial counsel's alleged error or omission**

Lastly, Ms. Chew is unable to establish the required prejudice, mandated by the Pierce test, or any prejudice at all, in connection with trial counsel's failure to obtain and introduce evidence of her mental health diagnoses or status as of the time of the fatal crash. "Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." Id. at 374. As set forth above, evidence of Appellant's mental illness was and is inadmissible at trial under the circumstances of this particular case. Therefore, as a matter of logic, since counsel was precluded by law from introducing such mental health evidence at trial, Appellant cannot demonstrate that a proffer of mental health evidence at trial would, with reasonable probability, have resulted in an outcome other than guilty of murder in the third degree.

Accordingly, Appellant has not and cannot establish the required prejudice to support her claim for collateral relief pursuant to the third prong of the test enunciated in Pierce.

## VI. CONCLUSION

When the PCRA Court determines that even one of the three prongs of an ineffectiveness of trial counsel claim, as set forth in Pierce, has not been demonstrated by Petitioner, the PCRA Court's denial of the PCRA Petition without a hearing is proper, since no purpose would be served by holding a hearing. Commonwealth v. Jones, 942 A.2d 903, 906 (Pa. Super. 2008). In the instant case, for all of the foregoing reasons, Appellant Ms. Chew has failed to establish meritorious claims regarding any of the three Pierce ineffectiveness requirements.

19

Accordingly, we respectfully submit that our Order of November 2, 2020, denying and dismissing Appellant's Second Amended Post Conviction Relief Act Petition without a hearing, should be affirmed.

BY THE COURT:

Date: 1/15/21

_____
GARY B. GILMAN,          J.

N.B. It is your responsibility
to notify all interested parties
of the above action.

20